**In re the Marriage of Kathleen G. KOTTKE, petitioner, Respondent,**

v.

**Gary C. KOTTKE, Appellant.**

**No. C9–83–2036.**

Court of Appeals of Minnesota.

Aug. 7, 1984.

Philip N. Scheide, Eagan, for appellant.

Joseph W. Hautman, Minneapolis, for respondent.

Heard, considered and decided PARKER, P.J., and FORSBERG, and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This is an appeal from three parts of the division of property in a marriage dissolution case. We affirm.

## FACTS

Gary and Kathleen Kottke were married on August 20, 1960. Appellant was 42 years old and respondent was 40 at the time of the dissolution. They had three children who had reached their majority and were emancipated. The Kottkes had owned their home in Bloomington since 1978 and had previously lived with Kathleen's mother for 14 years.

At the time of the dissolution, Gary Kottke's gross annual income was $28,739.81. He had completed 16 years of service credit toward his pension, which he is eligible to receive upon reaching age 50. In addition, appellant is a corporate pilot and flight instructor, from which he earned approximately $5,500 in 1982.

Respondent is employed by United States Merchandise Corp., earning an annual income of $12,000. No spousal maintenance was sought by or awarded to either party.

The parties separated in September 1982 and this action was commenced in January

1983 by respondent. At the time of separation, appellant stayed in the homestead of the parties and respondent left, taking with her the 1980 Buick Regal automobile. Appellant continued to make payments on the vehicle through a biweekly payroll deduction.

A temporary order was issued April 7, 1983, in relevant part ordering respondent to make all car payments beginning March 22, 1983. Appellant was awarded exclusive occupancy of the home, subject to all ownership obligations, including all mortgage payments. Appellant also continued to pay $86.77 in biweekly car payments when respondent found that she was unable to afford the payments. Respondent surrendered the car to appellant.

After a June 1983 trial, the trial court ordered dissolution of the marriage and its division of property included these relevant parts:

1. Kathleen Kottke was awarded the 1980 Buick Regal, $18,846 "for her non-marital interest," and a one-half interest in a percentage of Gary Kottke's pension benefits at the time they are payable.

2. Gary Kottke was awarded the part of future pension plan benefits not awarded to Kathleen.

3. Gary Kottke was awarded the $128,000 home of the parties subject to a $68,750 incumbrance. The property was to be sold by 1984 and the equity divided equally after payment of the incumbrance, sale expenses, respondent's $18,846 non-marital interest, $2,000 to appellant for home improvement debts, and reimbursement to appellant for future capital improvement costs and principal payments on the mortgage.

Appellant moved for amendments of the trial court decision and for a new trial. The court denied the motion for a new trial, amended one finding of fact due to a clerical error, and amended a conclusion of law to award appellant the 1980 Buick Regal because respondent was unable to make the payments and had given appellant possession of the car. Appellant brought this appeal, claiming reversible error in parts of the division of property.

## ISSUES

1. Did the trial court err in finding that respondent's inheritance was traceable to the homestead of the parties, or in awarding respondent a benefit based on her inheritance?

2. Did the trial court abuse its discretion in awarding respondent a continued interest in appellant's pension?

3. Did the trial court abuse its discretion in not awarding judgment to appellant for car payments which respondent was unable to make before surrendering possession of the car to appellant?

## ANALYSIS

A division of marital property must be "just and equitable." Minn.Stat. § 518.58 (1982). Absent an abuse of broad discretion the division determined by the trial court will not be disturbed. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983). Related findings of fact must be upheld unless clearly erroneous. Rule 52.01, Minn.R. Civ.P.

1.

It must be "presumed" that property of each spouse is marital property for purposes of division in a dissolution case. Minn.Stat. § 518.54(5) (Supp.1983). However, non-marital property specifically includes an asset inherited by one spouse from a third party. Section 518.54(5)(a) (Supp.1983).

■ Non-marital property also includes all or part of an asset acquired through investment of non-marital property, including an inheritance. *Brown v. Brown*, 316 N.W.2d 552 (Minn.1982).

Judicial decisions for tracing a current asset to its source were confirmed in 1978 by the Minnesota Legislature. Minn.Stat. § 518.54(5)(e) (Supp.1983) provides:

"Non-marital property" means property real or personal, acquired by either spouse before, during, or after the exist-

ence of their marriage, which ... (c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e) ....

■ Consequently, the trial court lawfully views as non-marital property a portion of the homestead "readily traceable" to an earlier inheritance by Kathleen Kottke.

During the marriage, respondent learned she would receive an inheritance of more than $27,000 from her uncle. When the Kottkes learned of the forthcoming inheritance, they decided to purchase a lot and build a home. Because the estate was taking a long time to settle, Kathleen's uncle loaned the couple money in anticipation of the inheritance. The parties signed a note for $13,500 in December 1978. The lot was purchased at that time for $22,500. The Kottkes borrowed $7,300 from appellant's credit union to pay the balance on the lot and then borrowed $7,300 from respondent's uncle to pay off the loan made at the credit union.

When respondent received the inheritance in October 1979, she put the check from the estate into the Kottke's joint checking account. The Kottkes used the funds to pay back her uncle and the rest was used to purchase things for the house.

Appellant argues that because the inherited funds were not placed in a separate account, the funds were commingled, and the court was "powerless to assign a non-marital interest in the property."

Contrary to appellant's assertion, the weight of the evidence supports the finding that the inheritance is readily traceable. The court based its finding on the notes that were issued by the Kottkes to Kathleen's uncle to be paid "on settlement of H. Aanerud Estate; on the testimony that when the Kottkes learned that Kathleen would be inheriting a sizeable amount of money, they decided to purchase a lot and build a home; on testimony of Gary Kottke that the parties were dependent on Kathleen's inheritance in buying the lot and building the home, and on evidence that the Kottkes used the same joint checking account to deposit and withdraw funds from

the notes, pay for the lot and deposit the inheritance.

Upon this evidence supporting the view of the trial court, we conclude it was not clearly erroneous for the court to find that ownership of the home of the parties was acquired in part by exchange of respondent's inheritance.

■ Appellant contends the trial court should be held to a "strict tracing" standard. His argument relates to the statutory presumption of marital property and is supported by several appellate decisions in other states. *See Jenks and Jenks,* 294 Or. 236, 656 P.2d 286, 289 (1982). We reject the notion to expand or otherwise modify a standard set by statute. In Minnesota tracing of an asset to a non-marital source is required when the owner shows by a preponderance of evidence that the asset was "acquired in exchange for" non-marital property.

■ Finally, appellant maintains he must share equally in the homestead to avoid "undue hardship." Minn.Stat. § 518.58 (Supp.1983) permits the court to divide non-marital property on a showing of hardship. We must respect the broad discretion of the trial court on this contention.

■ Appellant claims hardship because for 14 of the 22 years of marriage, the Kottkes lived with respondent's mother and made "substantial contributions to and improvements of the mother's property." According to Kathleen Kottke, the mother no longer owns the home. The record does not substantiate any significant contributions, and appellant himself testified that the arrangement with his mother-in-law was relatively loose. The trial court did not abuse its discretion in awarding Kathleen a benefit based on her inheritance.

2.

We conclude there was no abuse of discretion in the award of a percentage interest in appellant's pension plan.

The trial court decided on a fixed percentage method to deal with the pension,

awarding respondent one-half of the marital interest in pension benefits when they become payable. The trial court concluded:

> ... [T]he marital interest of each payment will be a fraction of that payment, the numerator of which shall be the number of years of marriage ... during which benefits were being accumulated, the denominator being the total number of years ... during which benefits were accumulated prior to when paid.

The trial court correctly observed that application of this formula to similar facts was endorsed by the Minnesota Supreme Court in *Janssen v. Janssen*, 331 N.W.2d 752 (Minn.1983).

■ Appellant contends the trial court should have dealt with the pension benefits according to the "present cash value method," awarding the benefits to appellant and awarding respondent assets equal to a portion of the present value of the benefits.

■ The present cash value method is preferred when there are sufficient assets to permit an equalizing award without hardship to either party. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983). That is not the case here. Because another method was not employed by the trial court, it made no findings on the present value of the benefits. Respondent's reliable estimate shows a value of more than $115,000,[1] and it would be impossible to equalize the award of benefits to appellant from the limited additional property of the parties. In this situation the *Taylor* opinion says the fixed percentage method should be used. *Id.* at 799.

The *Taylor* decision also calls for use of the fixed percentage method when calculation of present value benefits will be speculative. Because appellant's benefits will vary depending on his choice of a retirement date, evidence does not reasonably support a correct calculation of value in this case. A proper valuation is also impaired by the risk of appellant's death before age 50. The accuracy and fairness of pension valuations is always threatened by differences between life expectancy predictions and the actual life span of each party.

Appellant contends respondent will unfairly benefit from increases in pension payments that will result from future salary increases. We conclude this characteristic of appellant's pension benefit does not support use of another method of division when that method is precluded by the rule of law developed in the *Taylor* case and other earlier decisions of the Minnesota Supreme Court. *See, DuBois v. DuBois, Id.; Janssen v. Janssen, Id.*

■ Appellant also contends the pension benefit award should be reduced to take account for respondent's future social security benefits. Appellant's present employment qualifies him for pension benefits but not for social security, and he has not yet had sufficient quarters of covered employment to qualify for social security benefits.

■ Social security benefits are income rights and do not justify reduction of an award based on pension benefits of the other spouse. *Taylor v. Taylor, Id.* at 799; *Elliott v. Elliott*, 274 N.W.2d 75, 77 (Minn. 1978). Likewise appellant's qualification status for social security benefits relates only to a matter of future income. Another result would unfairly favor appellant, who presently enjoys much greater income than respondent and who has independent opportunity to improve his income, including the opportunity through future earnings to qualify for social security benefits.

■ Finally, appellant challenges division of pension benefits that will cover payments prompted either by his retirement or his disability. He contends disability benefits would substitute for his income and should not be affected by a property award. We decline to introduce a special rule relating to disability benefits which are incidental to this and most pension plans.

---

1. Appellant claims the present value of the benefits should be in the amount he previously contributed to the pension plan, $14,780. There is no precedent permitting the courts to ignore the true value of pension benefit inclusive of guaranteed benefits funded by the employer. *See, DuBois v. DuBois*, 335 N.W.2d 503, 506 (Minn. 1983).

3.

The trial court denied a judgment against respondent for $839.14, which appellant paid on the parties' car during a period when respondent had been ordered to pay. At the time of a temporary hearing, respondent thought she would be able to make car payments and so she was awarded the car. It turned out that due to other expenses, such as her son's tuition, she was unable to make the payments.

Appellant characterizes respondent's inability to make the payments as a "refusal." The record does not reflect this characterization. When respondent found that she could not make the payments, she surrendered the car to appellant. The trial court did not abuse its discretion in declining to render judgment against respondent for the Buick Regal payments she could not make.

## DECISION

The trial court did not commit reversible error in its findings of fact on respondent's non-marital property or in its award of that property. The court did not abuse its discretion in decisions on pension rights of appellant or debt payments of appellant on a car awarded to him.

Affirmed.