**In re the Marriage of Myles B. DURAND, Petitioner, Appellant,**

v.

**Patricia A. DURAND, Respondent.**

No. C0-85-20.

Court of Appeals of Minnesota.

May 14, 1985.

Dianne Wright, New Brighton, for appellant.

James H. Hennessy, Dale M. Wagner, Barnett, Ratelle, Hennessy, VanderVort, Stasel & Herzog, Minneapolis, Roger A. Peterson, Joseph B. Nierenberg, amicus curiae, Minnesota Police Pension Council, Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant husband Myles Durand appeals from an order denying his motion for a new trial, and contends the trial court (1) abused its discretion by not basing the present cash value of his vested pension on his projected retirement age of 65; (2) abused its discretion in awarding spousal maintenance to respondent wife Patricia Durand; and (3) erred by failing to acknowledge his nonmarital property. We remand for further findings and such proceedings as are deemed necessary by the trial court.

## FACTS

Husband and wife were married for 27 and ½ years. They have three children, all of whom have reached the age of majority.

Husband is 51 years old. He has been employed by the Minneapolis Fire Department as a first-grade firefighter for approximately 25 years. He earns $1,644.75 net income per month from firefighting and an additional gross monthly income of $64.85 as a trustee of the Minneapolis Fire Department Pension Board. His pension has vested and matured. He could have retired at age 50. He has earned 37 out of a maximum of 41 retirement units and can receive $1,200 a month if he retires now. He testified that he likes his job, plans to work until he is 65, and has applied for a light duty assignment.

Each of parties' experts testified to the present value of husband's pension. Husband's expert testified that 65 was the proper age to assume as retirement, and testified with regard to present value based on a retirement age of 65. Wife's expert had no opinion about the proper age of assumed retirement. He testified with regard to present value based on immediate retirement and on retirement at age 58.

| Retirement Age | Present Cash Value of Pension |
|---|---|
| 65 | $ 41,466 |
| 58 | 75,500 |
| 51 | 152,100 |

Husband estimated that the average age of retirement for Minneapolis firefighters is 59–60.

Wife is 48 years old. She has been employed as a clerk-typist I, level 6, by the Minneapolis School Board for the past 15 years. She left an earlier job when her first child was born. She earns a net income of $892 per month for ten and one-half months each year. Under her agreement with the school system, she is guaranteed three days of work per week; however, she has been regularly working five days per week. She also earns a net monthly income of $224.45 from working at a bar. Assuming a retirement age of 60, the present value of her pension is $15,300.

The trial court made the following sole finding with regard to husband's pension:

X.

Through his employment the petitioner participates in a pension plan consisting of 37 retirement units valued at a fraction of a first-grade firefighter's pay and with a monthly payout of $1,200.00 per month, payable immediately upon retirement. Petitioner's normal, mandatory retirement age is 65; the average retirement age for Minneapolis firemen is approximately 58 to 59 years of age. The present value of petitioner's retirement plan is $152,100.00 if he retired immediately. The present value of petitioner's retirement plan is $75,500.00 if he retired at age 58.

The trial court made no findings on maintenance pursuant to Minn.Stat. § 518.551, subds. 1 and 2 (1984). Neither did it make findings on consideration of husband's alleged nonmarital interest in two automobiles owned by the parties at the time of the dissolution.

The court awarded husband his pension, an automobile valued at $3,075, and household goods valued at $444. It awarded the parties' homestead to wife "free and clear of any claim by petitioner in view of the comparable values between the equity in the homestead and the total value of the pension plans." The homestead has a net equity of $64,752. The court also awarded wife her pension, an automobile with a net value of $1,837, household goods valued at $3,733, and maintenance of $250 per month for seven years.

Husband moved for amended findings of fact and conclusions of law or, in the alternative, for a new trial. In response, wife submitted an affidavit from the present Minneapolis fire chief stating that the average retirement age of Minneapolis firefighters is 58 years and this average has not changed for the past ten years. Husband then submitted an affidavit from the present secretary of the Minneapolis Fire Department Relief Association acknowledging that the average age of retirement is 58 years, but opining the average age would be rising.

The trial court denied the motion for amended findings or a new trial. No findings or memorandum accompanied that denial. Husband appealed.

## ISSUES

1. Did the trial court abuse its discretion by not basing the present cash value of husband's vested and matured pension on his projected retirement age of 65?

2. Did the trial court abuse its discretion in awarding spousal maintenance?

3. Did the trial court err by failing to make findings with regard to husband's nonmarital property?

## ANALYSIS

### I.

Husband contends that the trial court abused its discretion by not basing the present value of his vested pension on his projected retirement age of 65.

The trial court's sole finding on husband's pension stated that the present value of that pension is $75,500 if husband retires at age 58, $152,100 if he retires immediately, the mandatory retirement age of Minneapolis firefighters is 65, and the average age of retirement is approximately 58 to 59. The court did not specifically adopt either the $152,100 figure or the $75,500 figure. Inasmuch as the trial court awarded the entire homestead equity to wife because of the "comparable values between the equity in the homestead and the total value of the pension plans," a permissible inference may be drawn that the trial court valued husband's pension at a retirement age of 58.

A trial court has broad discretion when dividing marital property in a dissolution and will not be overturned on appeal except for a clear abuse of discretion. *Kowalzek v. Kowalzek*, 360 N.W.2d 423, 426 (Minn.Ct.App.1985) (citing *Bogen v. Bogen*, 261 N.W.2d 606, 609 (1977)). As with other marital property, the valuation and division of pension rights is a matter for the trial court's discretion. *DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn.1983). The trial court's method of valuation is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach. *Castonguay v. Castonguay*, 306 N.W.2d 143, 147 (Minn.1981). While trial courts are accorded broad discretion in both valuation and distribution of an asset, this discretion is not unlimited and must be based upon "clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983).

We recognize that husband specifically requested that the court place a

present cash value on the pensions of the parties.[1] A present value is

> the sum which a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future.

*DuBois,* 335 N.W.2d at 506 (emphasis in original).

It

> discounts an award to that amount which, *if presently received,* could be invested in order to yield the future sum.

*Id.*

> This method is preferred when there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing undue hardship to either spouse and where testimony on valuation is not unduly speculative.

*Taylor v. Taylor,* 329 N.W.2d 795, 798 (Minn.1983).

In this case, the placing of a present value on the pension benefits would seem advantageous to the parties because it accomplished a complete severing of their relationship and an avoidance of the continuous jurisdiction of the court. *See DuBois,* 335 N.W.2d at 506. However, risks to both parties accompanied husband's request for present valuation. The present value of husband's pension was dependent in large measure upon the retirement date chosen by the trial court. If the court had determined husband's pension value on the assumption that he would retire immediately or at age 58 and, instead, he had retired at age 65 or 70, that valuation would have been high, and resulted in a marital asset windfall to wife. Conversely, if the court were to value husband's pension on the assumption that he would retire at age 65 and instead he decided to retire immediately or at age 58, that valuation would have been low, with a resulting marital asset windfall to husband. Because of the risks here involved, it is critical that the trial court make a clear indication not only of the date of retirement it chose, but why it so chose.

At trial, husband's expert urged that 65 was the proper retirement age to be utilized in valuing husband's pension. Wife's expert, while proffering no opinion about what retirement age would be proper, did value the pension alternatively at a retirement age of 51 and 58. It was only after husband's post-decree motion that wife presented affidavit evidence that 58 was the average age of retirement for Minneapolis fire fighters, and that age had not changed in the past ten years. In response, husband submitted a post-decree affidavit that opined the average age of retirement would rise in the future.

■ Husband challenges wife's post-trial affidavit evidence, and argues that it is improper for the trial court to rely on any evidence submitted by wife in response to husband's post-trial motions. Minnesota Rule of Civil Procedure 59.01 permits the court to receive additional evidence after motion for new trial has been made[2]. As trier of fact, it can receive additional evidence rather than grant a new trial if such a procedure will correct an error. 2 Hetland and Adamson, Minnesota Practice 618 (1970). The trial court here merely denied husband's post-trial motion without making findings or attaching a memorandum. We can only guess at the trial court's intention.

■ Ultimately, the trial court's findings do not aid us in determining why it decided as it did on the value of husband's pension. We conclude that proper review of this issue is not possible on the state of the record before us. This court must have the input of the trial court who had the opportunity to review the documentary and testi-

---

1. An alternative method involving payment to one spouse of a percentage of the other spouse's pension benefits at the time they are received was available to the court and the parties. *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983).

2. Rule 59.01 reads, in pertinent part, as follows: On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct entry of a new judgment.

monial evidence and test the credibility of the witnesses.

This court recently addressed the issue of valuation of a Minneapolis police officer's pension in *Hein v. Hein*, 366 N.W.2d 646 (Minn.Ct.App.1985). In remanding for review of age 65 as a retirement age, the *Hein* court directed that the trial court explain "why it chose age 65 or for further proceedings." *Hein* at 650. Such remand is appropriate in the instant case also, to allow the trial court to require further proceedings or make adequate and specific findings regarding an appropriate retirement age, and the court's reasons for choosing that age.

## II.

Husband next contends that the trial court abused its discretion in awarding to wife maintenance of $250 per month for seven years.

■ A trial court has broad discretion when determining a maintenance award. Its determination will be reversed only if it amounts to a clear abuse of discretion. *Broms v. Broms*, 353 N.W.2d 135 (Minn. 1984). In order for there to be adequate review, the trial court's decision must be supported "by either clear documentary or testimonial evidence, or by comprehensive findings issued by the court." *Guetzkow v. Guetzkow*, 358 N.W.2d 719, 721 (Minn. Ct.App.1984) (quoting *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn. 1983)).

■ On review, the trial court's discretion must be examined in light of Minn. Stat. § 518.552 (1984) which details the factors to be considered by the trial court when making the award. *Broms*, 353 N.W.2d at 137. Minn.Stat. § 518.552, subd. 1 (1984) requires that the trial court find that the spouse seeking maintenance (1) lacks sufficient property to provide for his or her reasonable needs, and (2) is unable to adequately support himself or her-

self through appropriate employment. Here the trial court made no such findings.

■ Minn.Stat. § 518.552, subd. 2 sets forth the factors to be considered in determining the amount of maintenance. The basic issue is the financial need of the spouse receiving maintenance and the ability to meet those needs balanced against the financial condition of the spouse providing maintenance. *Wiltsey v. Wiltsey*, 357 N.W.2d 400 (Minn.Ct.App.1984). The trial court made no findings with regard to Minn.Stat. § 518.552, subd. 2. Further, it made no findings with regard to the expenses of either of the parties.[3] Meaningful review on the issue of whether wife meets the standards set forth in section 518.552, subds. 1 and 2, is impossible in the absence of trial court findings. Therefore, this issue also must be remanded.

## III.

Husband contends that the two automobiles were directly traceable to an inheritance he received and thus are nonmarital property under Minn.Stat. § 518.54, subd. 5(a) (1984).

■ The property of each spouse is presumed to be marital property to be distributed in a dissolution. Minn.Stat. § 518.54, subd. 5; *Kottke v. Kottke*, 353 N.W.2d 633, 635 (Minn.Ct.App.1984). However, an asset inherited by one spouse from a third party is nonmarital property as is all or part of an asset acquired in exchange for an inheritance. *Id.* In order to trace an asset to a nonmarital source, the owner must show that the asset was "acquired in exchange for nonmarital property by a preponderance of evidence." *Kottke*, 353 N.W.2d at 636.

■ Husband claims that the Oldsmobile now worth $3,075 was purchased with money he inherited from his father. He also claims $643 nonmarital equity in the Plymouth automobile awarded to wife because he made the downpayment from

---

**3.** At trial, husband submitted a list of his expenses totaling $1,771. His testimony regarding rent contradicted the rent figure on his list of

living expenses. Earlier, he had submitted a list of living expenses totaling $1,021.

money he inherited. The trial court made no written findings to indicate its consideration of husband's claim of nonmarital interest in these vehicles. While this issue alone may not have merited our remand for findings, inasmuch as the trial court will be reconsidering both the pension valuation and spousal maintenance award, we direct that it make findings regarding the automobiles also.

## DECISION

Proper review of the trial court's determinations regarding valuation of husband's pension, award of maintenance to wife, and award of the automobiles of the parties is impossible without adequate findings. These issues are remanded to the trial court for entry of adequate findings based on the record and such additional proceedings as the trial court deems necessary.

Remanded for findings consistent with this opinion.

POPOVICH, C.J., specially concurs.

POPOVICH, Chief Judge, concurring specially.

I concur with the majority's decision to remand this matter for detailed findings. However, I disagree with the analysis used by the majority in two respects.

1. The majority correctly asserts that the trial courts are accorded broad discretion in both valuation and distribution of marital assets including pensions. However, this discretion is not unlimited and must be based upon "clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Ronnkvist*, 331 N.W.2d at 766. Unless there is clear documentary or testimonial evidence or comprehensive findings to the contrary, the presumption with regard to retirement age advanced by amicus is a good one: A person is presumed to retire at his or her mandatory age of retirement and any pension should be valued at that date unless the evidence proves the potential retiree has made plans to retire at an earlier date. Of course, if evidence indicates the poten-

tial retiree plans to retire at an earlier date, the pension should be valued as of the planned retirement date.

The presumption advanced by amicus would lend both uniformity and fairness to pension valuations. In contrast, the use of an average age of retirement is flawed unless there is direct evidence that the individual in question is subject to the same factors which produce the average age.

In this case the use of an average age is particularly onerous. First, husband testified that he planned to retire at the mandatory age, he had no intention of retiring immediately, and he applied for a position driving a command vehicle. There was no evidence to the contrary and no evidence about the factors which produced the average age or that the factors applied to husband.

Second, recent legislation ordered Minneapolis to "make every reasonable attempt to provide less hazardous duty employment positions" to those who become marginally or less severely disabled. Minn.Stat. § 423A.13 (1984). Clearly this legislation will enable some firefighters to work longer and should significantly affect the average retirement age of 58.

2. Even with detailed findings I would be reluctant to affirm maintenance for seven years. Wife is not only working but she has been employed by one employer, the Minneapolis School Board, for the past 15 years. She has not taken any opportunity to progress because she did not want to leave the particular school in which she was working. She is relatively young. Based on her circumstances and her potential for greater income, I believe a shorter period of maintenance is sufficient.