**In re the Marriage of John Thomas RILEY, Petitioner, Respondent,**

v.

**Mary Elizabeth RILEY, Appellant.**

No. C2–84–1837.

Court of Appeals of Minnesota.

June 11, 1985.

Review Denied Aug. 29, 1985.

Charles A. Cox, Cox & Goudy, Minneapolis, for respondent.

Bruce P. Candlin, Candlin, Faulkner & Sjostrom, Minneapolis, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

CRIPPEN, Judge.

Mary Riley brought this appeal from a dissolution judgment, contending that the trial court failed to properly determine the marital nature of certain property, failed to divide the property equitably, awarded inadequate child support, and erred in failing to award her maintenance.

Respondent also seeks review of the judgment, contending that the court awarded excessive child support and erred in awarding attorney fees to appellant.

## FACTS

The parties were married on June 4, 1978, a second marriage for both of them. Respondent John Riley is age 45 and appellant Mary Riley is age 44. Two children were born of the marriage, Kathleen (August 4, 1979) and Timothy (February 22, 1982). The parties stipulated that appellant would be given custody of the children, subject to court established visitation by respondent.

Appellant has custody of two children from her prior marriage, and receives child support of $200 per month from her first husband. During the parties' marriage, appellant was the homemaker and cared for the four children. Appellant is college educated, but has not worked full-time since 1966, worked only occasionally and part-time during her former marriage, and did not work outside the home while the parties were married. Appellant is the beneficiary of a trust established by her deceased father. Her trust income during the marriage was approximately $14,000 per year, and she testified that she used all of the income for household expenses.

Respondent has three children from his prior marriage, one of whom was a minor at the time of trial. He pays $300 per month child support for his minor child and $450 per month for the college expenses of an adult child.

Respondent worked at Northwest Microfilm at the time the parties married. He and two others formed Northwest. The company was acquired by Kalvar Corporation in 1980; respondent received 653,877 shares of Kalvar stock, and over $200,000 in cash. He worked for Kalvar as vice president until 1982, and then became president. His annual average salary generally exceeded $100,000. During the marriage, respondent typically worked 60–70 hours per week and traveled frequently on business. In March 1983, he was replaced as president. He became chairman of the board, a part-time position, earning $40,000 per year plus certain fringe benefits.

Each of the parties owned property prior to the marriage.

The trial court determined the marital and non-marital status of the property and divided it. It found that respondent's current monthly net income was $2,180, but $1,430 after payments for two children of a prior marriage. The court initially awarded appellant child support of $350 per month per child, but then amended that award to $450 per month per child. It declined to award maintenance, and awarded attorney fees of $3,000 to appellant. Appellant contests the determination of marital and non-marital property, the division of the property, the amount of child support, and the failure to award maintenance. Respondent disputes the amount of child support and the award of attorney fees.

## ISSUES

1. Did the trial court err in its determination of the marital and non-marital nature of the parties' property.

2. Did the trial court abuse its discretion in the distribution of property or in awarding attorney fees to appellant?

3. Did the trial court err in deciding issues of child support and maintenance?

## ANALYSIS

 1. Marital property and non-marital property are defined in Minn.Stat. § 518.54, subd. 5 (1984). Property acquired by either spouse during the marriage is presumed marital. *Id.* The spouse seeking to prove that property acquired during the marriage is non-marital must do so by a preponderance of the evidence. *Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.Ct.App.1985). Unless the trial court was clearly erroneous in its findings, this court will not reverse its decision. *Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.Ct. App.), *pet. for rev. denied,* (Minn. Dec. 20, 1984).

Appellant concedes that respondent's non-marital share of the property is worth approximately $653,000. Her non-marital property is worth approximately $270,000. The dispute arises over real and personal property worth approximately $300,000, including numerous items acquired with funds from a Merrill Lynch cash management and securities account owned by the parties.

 Funds from the parties' Merrill Lynch account were used for many of the parties' living expenses and most of their investments. Respondent deposited the proceeds from the sale of Kalvar stock and other non-marital property into the account. He contended successfully at trial that investments purchased from those non-marital funds remain non-marital. Appellant asserted at trial and on appeal that such proceeds were placed in a joint marital account and commingled with marital funds, and the purchase of non-marital assets with the original non-marital funds of respondent cannot be traced.

The trial court found:

> Although to a certain extent the parties' non-marital and marital funds were commingled into this account, it is very clear that the majority of investments made from said account constitute an exchange of petitioner's non-marital property and it would be unfair to him for purposes of property division not to take this into account.

Assets may be traced to a non-marital source "when the owner shows by a preponderance of evidence that the asset was 'acquired in exchange for' non-marital property." *Kottke*, 353 N.W.2d at 636. The trial court found that respondent met his burden of proof, and the record does not show this finding was clearly erroneous. *Id.*

 2. The court is to make a "just and equitable" division of the marital property of the parties. Minn.Stat. § 518.58. The court need not, however, make an equal division of property acquired during the marriage. *Ruzic v. Ruzic*, 281 N.W.2d 502, 505 (Minn.1979). The court has broad discretion in the division of property, *Bollenbach v. Bollenbach*, 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970), and will be overturned only upon an abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977).

 Respondent John Riley was awarded $30,500 of appellant's non-marital property, including $20,000 cash and appellant's $10,500 interest in a cabin owned by the parties. Mary Riley was awarded about $62,000 of respondent's non-marital property, including $30,000 in cash and respondent's non-marital interest in the homestead.

Respondent was awarded approximately $31,400 in marital property, including $27,-800 from accrual of respondent's profit sharing plan, and $3,655 account at D.B. Blair. Appellant was awarded about $29,-000 of marital property, the marital interest in the homestead.

Simply, but correctly, this summarizes a division viewed in a more complex and detailed fashion by both parties. The remaining property consisted of non-marital assets, and was properly awarded to the owners. We conclude that the distribution did not constitute an abuse of discretion.

 Respondent also contests the award of attorney fees to appellant. A court may award attorney fees under Minn. Stat. § 518.14 (1984). Such an award is

within the discretion of the trial court, and requires a clear abuse of discretion for reversal. *Lappi v. Lappi*, 294 N.W.2d 312 (Minn.1980). No such abuse of discretion occurred here.

3. Did the trial court err in its child support award?

■ A. *Life insurance.* The trial court did not order respondent to maintain life insurance as security for child support. Appellant contends this was error, arguing that the child support obligation is not terminated by the death of a parent obligated to support a child. Minn.Stat. § 518.64, subd. 4. Appellant cites *Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn.1979). The exceptional circumstances making the failure to secure life insurance error in *Arundel* are not present in this case and the statute does not compel the trial court to order respondent to maintain life insurance. The trial court did not abuse its discretion in declining to order respondent to obtain life insurance to secure the child support.

B. *The adequacy of the child support award.*

Appellant's estimated monthly expenses were $3,100. The trial court determined that respondent's current monthly earnings were $2,180, less child support payments. In addition, respondent had $120 per month in investment income. The trial court set the support "in light of the parties' relative resources [and] the needs of the children." Thus, the court deliberately chose an award greater than an amount calculated under the statutory guideline table, Minn. Stat. § 518.551, subd. 5 (1984). *See id.* subd. 5(d).

Under Minn.Stat. § 518.17, subd. 4 (1984), the trial court may order either or both parents to pay child support in an amount "reasonable or necessary" for the support of the child. It is to consider the following factors:

(a) The financial resources and needs of the child;

(b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

*Id.*

The legislature has determined "that children are entitled to benefit from the income of the non-custodial parent and to enjoy the standard of living that they would have had if the marriage had not been dissolved." *Letourneau v. Letourneau*, 350 N.W.2d 476, 478 (Minn.Ct.App. 1984).

■ While the trial court considered factors of needs and resources, it made no specific findings which would aid us in the determination of whether it properly took into account all of respondent's available resources, as well as appellant's monthly expenses, and the needs of the parties' children. In dissolution cases, because the trial court's discretion is so great, particularized findings are necessary. *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971). Consequently, we reverse and remand for a redetermination of the respondent's child support obligation. The trial court should address the resources of the father, as well as the needs of the children. Findings should address appellant's estimate of $3,100 monthly expenses, and the part of her expenses attributable to two children of a prior marriage.

4. *Maintenance.*

Finally, appellant disputes the trial court's failure to award her maintenance. She requested short-term maintenance, until the parties' youngest child attends school.

■ The standard of review upon a challenge of the trial court's decision regarding maintenance is whether the trial court abused its wide discretion, examined in light of the controlling statutory guidelines contained in Minn.Stat. § 518.552. *Erlandson v. Erlandson*, 318 N.W.2d 36,

38 (Minn.1982). Each case must be determined on its own facts and no single statutory factor is dispositive. *Id.* at 39.

A court may grant maintenance where the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or *is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.*

Minn.Stat. § 518.552, subd. 1 (1984) (emphasis added). The statute provides that certain factors should be considered. Minn.Stat. § 518.552, subd. 2.

■ In deciding whether short-term maintenance should be awarded, the focus of the court should be on a determination of the basic standards established by the legislature in Minn.Stat. § 518.552, subd. 1. *Otis v. Otis,* 299 N.W.2d 114, 117 (Minn. 1980).

Mary Riley is not working and was granted custody of the parties' minor children. Her circumstances are shaped to an unusual degree by the fact that, at age 44, she has two preschool children from her second marriage, for whom she has primary parenting responsibility. Her testimony indicated that she had not worked full-time since 1966, worked only occasionally and part-time during her first marriage, and had not worked at all during her second marriage. The parties did not have a traditional, long-term marriage in which the wife abandoned her own job and career to fulfill the traditional role of mother, wife and hostess for a rising business or professional husband. *See Abuzzahab v. Abuzzahab,* 359 N.W.2d 12, 16 (Minn.1984) (dissent). However, appellant has forgone employment for six years, and she has the responsibility of two young children at a time when the children of many women in traditional families are nearly grown. *See McClelland v. McClelland,* 359 N.W.2d 7, 10 (Minn.1984).

■ The trial court made no findings on factors relevant to the need for temporary maintenance, such as the wife's earning capacity, her ability to become self-supporting and her responsibility for the young children of the parties, at age 44. *See Kaste v. Kaste,* 356 N.W.2d 64, 69 (Minn. Ct.App.1984). We reverse and remand for such findings and for an award consistent with them.

### DECISION

The trial court was not clearly erroneous in its classification of marital and non-marital property, nor did it abuse its discretion in its division of the property. The trial court did not abuse its discretion in its award of attorney fees.

The trial court erred by failing to make its decisions on child support and maintenance based on adequate findings, and we reverse and remand for those findings.

Reversed and remanded in part, affirmed in part.