In re the Marriage of Gerald H.
GUETZKOW, Petitioner,
Appellant,

v.

Mary GUETZKOW, Respondent.

No. C5–85–1339.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Jack S. Jaycox Law Offices Ltd., Jack S. Jaycox, Nancy Murphy, Bloomington, for appellant.

Edward M. Cohen & Associates, Edward M. Cohen, David L. Olson, St. Louis Park, for respondent.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

Husband appeals judgment in dissolution, claiming the trial court erred in the valuation of certain property, in finding other property marital, in splitting the marital estate equally, and in ordering him to pay wife all proceeds from the sale of certain property. We affirm in part and reverse in part.

## FACTS

When the parties were married in 1978, appellant Gerald Guetzkow was 38 years old and had accumulated fairly significant assets. At the same time, respondent Mary Guetzkow owned a house that had been partially financed by appellant. They had one child together.

The parties' financial situation is quite complicated. Before they were married, appellant owned a construction business, Gerry Construction, Inc. He continues to own this company and it is a source of financial confusion as appellant regularly used the company's checks to pay for the family's routine expenses, including utility bills and the child's day care bills. He also had a stock and commodities account. During the marriage, appellant invested surplus corporate money in stocks in these accounts. There is controversy regarding whether the stocks are marital or non-marital property. In 1982, appellant acquired a substantial amount of land, known as Moorcroft, which has been subdivided. The parties agree that this property is marital property.

Among the many witnesses who testified at the four-day dissolution proceeding was a real estate appraiser who valued the Moorcroft property at $47,019. He stated that the total gross selling price of the approximately 60 acres would be $545,000. From this he subtracted commissions of $54,500, cost to create the lots of $273,529, and carrying costs of $169,952. Included in the carrying costs was $81,750 for an item called "entrepreneurship."

On March 1, 1984, the court entered judgment. By its own motion, on March 5, 1984, the court amended the judgment, increasing respondent's award by $64,375. The court explained this by stating that the original judgment had specifically held that the Moorcroft property was marital property, but had inadvertently failed to award respondent her share of its value.

Husband appealed the decision, claiming that the trial court erred in its findings on the stock, in not allowing the "entrepreneurship" as an expense, and in distributing the marital property inequitably in light of the short term marriage. This court held that the trial court did not make sufficient findings, nor was there sufficient documentary or testimonial evidence on these matters. Therefore, we remanded for more complete findings. *See Guetzkow v. Guetzkow*, 358 N.W.2d 719 (Minn.Ct.App. 1984).

Following remand, the trial court entered an order to amend the findings of fact. The court found that the value of Moorcroft was $128,769.00. The court did not allow a deduction for "entrepreneurship" for the following reasons: (1) it represented profit; (2) it included the costs of maintaining appellant's offices; (3) appellant's expert did not explain how he arrived at the sum of $81,750.00; (4) no one testified that the office expenses were specific to Moorcroft, nor that this expense was not attributable to the sale of other lots prior to trial; and (5) no reference or definition of the term "entrepreneurship" was contained in appellant's appraiser's report.

With respect to the stock market account, the court found that prior to the parties' marriage, appellant had $8,050.00 in an account with D.P. Anderson, and that appellant had acquired stock in EMPI and Digital Datacom during the course of the marriage. The court found that this stock was appellant's and not Gerry Construc-

tion, Inc.'s because the account was listed in appellant's name, prior tax returns had treated them as his, and because appellant's accountant testified that these stocks were personal assets that would be reported on appellant's personal returns. Therefore, the court determined that the proceeds from the sale of this stock, minus the original $8,050 and $8,000 in tax liabilities was a marital asset.

Husband appeals, claiming that the court erred in its valuation of Moorcroft and in finding that the stock market account was marital property, and that the court abused its discretion in awarding respondent more than one-half of the marital estate. Appellant also contends that the trial court erred when it later ordered that respondent receive all future net proceeds from the sale of the Moorcroft property.

## ISSUES

1. Did the trial court err in valuing the Moorcroft property?

2. Did the trial court err in finding that the stock market and commodities accounts were marital assets?

3. Did the trial court err in its ultimate distribution of the marital estate by awarding respondent an amount that was disproportional in light of the parties' short marriage?

4. Did the trial court abuse its discretion in ordering that respondent receive the net proceeds from the sale of any of the Moorcroft properties?

## ANALYSIS

### 1. *Valuation of Moorcroft*

■ The valuation of an asset is a question of fact that this court will not set aside unless it is clearly erroneous. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). However, the trial court's findings should be supported by documentary or testimonial evidence or by comprehensive findings. *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764 (Minn.1983).

■ Appellant claims that the trial court erred in valuing Moorcroft by completely disregarding the only expert's testimony,

which was that entrepreneurship constituted a proper item to be deducted as a carrying cost. Appellant argues that the only qualified expert characterized entrepreneurship as a contractor's fees for organizing, subdividing, and developing the property. The expert also stated that entrepreneurship includes appellant's operating expenses such as office rent, utilities, and employee's wages.

Appellant also argues that entrepreneurship has long been judicially recognized. He quotes *Arlen of Nanuet, Inc. v. State*, 26 N.Y.2d 346, 348, 258 N.E.2d 890, 902, 310 N.Y.S.2d 465, 481 (1970) (Breitel, J. dissenting in part), a New York condemnation case in which the dissent recognized that entrepreneurship is a proper element to be compensated for in eminent domain proceedings. He further argues that the Minnesota Supreme Court ruled similarly in *Rogers v. Rogers*, 296 N.W.2d 849, 853 (Minn.1980), in which the court stated that when valuing a closely held corporation the court should not include the value of personal services rendered by the owner.

We disagree with appellant's contention that the trial court erred in its valuation. The real estate appraisal authorities cited to this court refer to entrepreneurship as "entrepreneurial profit." *See* American Institute of Real Estate Appraisers, *The Appraisal of Real Estate*, p. 454–55 (8th ed. 1983). The expert did not explain how he arrived at this figure, nor did he attempt to allocate the sum between the previously sold lots and those lots still remaining. Furthermore, although appellant argues that this was compensation for his services, his expert stated that it would be considered a capital gain. In any event, the trial court had an opportunity to judge the credibility and demeanor of the expert appraiser. The court did not believe that the expert's appraisal was entirely correct. We cannot say that this was clearly erroneous.

### 2. *Stocks and Commodity Account*

■ Under Minn.Stat. § 518.54, subd. 5 (1984) non-marital property includes any property that was acquired before marriage or was acquired in exchange for such

property. Pursuant to that provision all property acquired by either spouse subsequent to marriage is presumed to be marital property. However, if a person can show by a preponderance of the evidence that the asset was acquired in exchange for non-marital property this presumption is overcome. *Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984).

Appellant testified to some length concerning these assets. He stated that these accounts were begun prior to the marriage and that they were used as a source for investing surplus capital of Gerry Construction. He stated that throughout the marriage if Gerry Construction had extra funds, he invested them in stocks in this account. At no time were any of the stocks purchased with his personal money or purchased jointly with his wife, nor was there any commingling of stock proceeds with any marital property. He stated that all proceeds from the sale of these stocks were immediately put back into the company to pay company bills.

The trial court found that these stocks were marital assets because the stocks were purchased during the marriage, and in appellant's name, c/o Gerry Construction. Furthermore, the proceeds from the stock were taxed to appellant. Therefore, the court concluded that the stocks were marital assets.

We find that the trial court erred in its determination. The court placed too much emphasis on the fact that the stocks were in appellant's name and taxed to appellant. Appellant had a rather informally run small corporation. Because the business was informally run, like so many other small businesses, appellant held the stock in his name alone, c/o Gerry Construction. Because it was a Subchapter S corporation, which is generally not taxed on the income it earns, it is not significant that the stocks were taxed to appellant. *See* I. Grant, *Subchapter S Taxation*, § 15.1 (2d ed. 1985). The overwhelming evidence concerning these stocks was that they were purchased with corporation money, never commingled with marital property, and immediately reinvested in the corporation

when they were sold. Therefore, we find that the trial court erred in determining that these assets were marital assets.

### 3. *Total Distribution of Marital Estate*

Appellant argues that the trial court erred in its division of the marital estate because "no weight was given to the fact that the marriage was extremely short in duration, that the parties have been previously married, that respondent is young and has good employability, or that appellant was the sole contributor to the acquisition and appreciation in the value of the marital estate." Minn.Stat. § 518.58 (1984) compels the trial court to make "a just and equitable division of the marital property * * *." The court should consider "all relevant factors" including the length of the marriage, the vocational skills, liabilities, needs, and income of the parties. *Id.* It is well established that the trial court has broad discretion in making its distribution, and that appellate courts will not overturn its decision unless there was a clear abuse of discretion or an erroneous application of the law. *Ebnet v. Ebnet*, 347 N.W.2d 840, 842 (Minn.Ct.App.1984) (citing *Servin v. Servin*, 345 N.W.2d 754, 758 (Minn.1984)).

■ We find no such abuse of discretion. The record shows that respondent has high, legitimate expenses, and has no real prospects for good employment in the near future. Further, Minn.Stat. § 518.58 creates a conclusive presumption that respondent did make substantial contributions to the acquisition of income and property. Finally, respondent was granted no spousal maintenance even though the trial court specifically found she was in need of financial assistance for a period of time to enable her to maintain the standard of living established during the marriage, to rehabilitate herself, and to care for the needs of their minor child.

### 4. *The Court's Order Regarding Net Proceeds From Sale of Moorcroft Property*

■ On June 12, 1985, the court entered an order that stated in part that "any future net proceeds from the sale of any Moorcroft lots be made payable to Respon-

dent; that any payments so received be applied against Petitioner's outstanding property settlement payments." Appellant argues that by this order the court is granting respondent the Moorcroft property. He argues that respondent already held a mortgage on this property, and that this order has upset the "questionable equitable balance reached by the trial court in its initial property distribution award * *." Therefore, appellant feels that this was an abuse of discretion which this court should overturn.

We disagree. The record shows that at the time of this order appellant had not paid any of the money that the judgment compelled him to pay. This order is merely a way to enforce the judgment. Appellant will only be compelled to pay the proceeds to the extent that there is outstanding property settlement payments. If he is current on his payments he will not have to pay out any of the proceeds. This is a fair remedy in light of appellant's failure to voluntarily pay the money that the judgment compelled him to pay.

### DECISION

We reverse the trial court on its finding that the stock and commodities accounts were marital assets. We affirm on all other matters.

Reversed in part, affirmed in part.