In re the Marriage of Ellen Jean
COFFEL, Petitioner, Respondent,

v.

Gerald Anthony COFFEL, Appellant.

No. C2-86-1454.

Court of Appeals of Minnesota.

Feb. 10, 1987.

Helen Hill Blanz, Grand Rapids, for respondent.

Albert V. Rosenbower, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and FOLEY, and WOZNIAK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is an appeal from a judgment of dissolution. Appellant contends (1) the trial court abused its discretion in its division of property and (2) erred in its maintenance award. We disagree and affirm.

## FACTS

Appellant Gerald A. Coffel and respondent Ellen J. Coffel were married on September 7, 1963. The parties have three children, one who is still a minor and living at home. Dissolution proceedings were commenced by respondent in May 1986.

In 1960, prior to his marriage, appellant purchased a small nursing home from his parents. Appellant bought the nursing home for $50,000, paying $8,000 to $10,000 in cash and the balance in $400 monthly installments. Appellant also assumed various mortgage loans on the nursing home property. Although appellant stated the sale was documented, he was unable to provide the trial court with any papers reflecting the terms of the sale. In addition, appellant recollects three of the mortgage loans he assumed, but cannot remember the terms of a fourth mortgage loan.

At the time of marriage, appellant owed his parents approximately $10,000 on the nursing home property. The assumed mortgage loans had been fully paid at this time. Appellant states the nursing home property had a value of $50,000 at the time of marriage and that he had $40,000 of equity in the property. Shortly after the parties married, the nursing home property was refinanced for $16,000. The nursing home had been in appellant's name up until the refinancing when the property was placed in both parties' names.

In 1974, the parties sold the nursing home property to Howard Longpre pursuant to a contract for deed. Longpre purchased the property for $39,000, paying $5,400 with the remainder payable in $211 monthly installments. Longpre also assumed the balance owed on the $16,000 mortgage loan, which amounted to $12,000. At the time of trial, Longpre owed approximately $5,250 on the contract for deed.

In addition to the sale to Longpre, there is some indication that the parties made prior attempts to sell the nursing home property. During the trial, respondent stated the property was sold or rented to someone who declared bankruptcy, resulting in the property being returned to the parties. Also, the trial court stated, in its partial proposed findings of fact, that the property was sold twice after the parties' marriage and sold last to Longpre for $39,000.

The parties also purchased property in Warba, Minnesota, for use as their homestead, consisting of three government lots numbered five, eight and four. Lots five and eight were purchased in 1974, and lot four was purchased in 1983 or 1984. The Warba property has a $50,000 value, subject to a lifetime lease with respondent's mother.

The record is not entirely clear with respect to the financing utilized to purchase the Warba property. Apparently, lots five and eight were purchased from the owner with the purchase price payable in monthly installments of $211. The record does not disclose the total price of lots five and eight, nor does it indicate the presence of any mortgage on the two lots. Appellant stated that $2,900 of the $5,400 received as a downpayment from Longpre was applied towards the purchase of lots five and eight. Appellant also stated that the $211 monthly payments were planned to correspond with the monthly payments received from Longpre. Respondent stated the similarity in amount is mere coincidence.

The purchase of lot four is supported by more detailed terms. The record states the parties paid $13,000 for lot four, making a $5,000 downpayment and financing the remainder pursuant to a mortgage with Itasca State Bank. Title to lot four is in both parties' names. The record further provides that the $5,000 down payment came from bulk social security checks paid to appellant and the minor son. Social security checks paid to appellant and the minor son were also used to pay off the mortgage with Itasca State Bank. Appellant does not know what percentage of the down payment or mortgage satisfaction is attributable to the minor son's social security funds. Presently, lots five, eight and four are paid for.

The record also contains evidence reflecting the parties' monthly income. Respondent earns approximately $448 per month as a cook for the Sheriff's Department. She also receives approximately $250 per month caring for an elderly man, and $60 per month as township supervisor for total monthly income of approximately $760. Appellant receives approximately $1,881 per month, which consists of $892 from workers compensation for disability payments, $610 from social security disability, $68 from veterans pensions and $311 from property sales.

The trial court found that "any non-marital interests that the [appellant] had in real estate property or nursing home interest at the time of his marriage has been so amalagated and blended into marital property as to be untraceable." The court ordered that respondent had the right to occupy the homestead until the minor son became of age, at which time the homestead would be sold. Upon sale of the homestead, the court ordered that respondent receive $17,-500. The trial court also ordered appellant to pay respondent maintenance of $400 per month for two years.

## ISSUES

1. Did the trial court abuse its discretion in its division of the parties' homestead property?

2. Did the trial court err in its maintenance award?

## ANALYSIS

■ 1. Appellant contends the trial court abused its discretion in dividing the parties' homestead property because it refused to trace the property to appellant's nonmarital assets. A trial court has broad discretion in dividing marital property pursuant to a marriage dissolution. Absent a clear abuse of discretion, the trial court's decision must stand. On review, this court must affirm the trial court's division of property, if it had an acceptable basis in fact and principle even though this court may have taken a different approach. *Wilson v. Wilson,* 348 N.W.2d 357, 359 (Minn. Ct.App.1984) (quoting *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.1984) *citing Castonguay v. Castonguay,* 306 N.W.2d 143, 147 (Minn.1981); *Senglaub v. Senglaub,* 302 Minn. 547, 548, 224 N.W.2d 514, 515–16 (1974)).

■ Underlying division of property in a dissolution case is the presumption that property acquired by either spouse subsequent to marriage is marital property. The presumption of marital property is overcome by a showing that the property is non-marital property. Minn.Stat. § 518.54, subd. 5 (1984). Non-marital property may include all or part of an asset acquired

through investment of non-marital property. *See Kottke v. Kottke,* 353 N.W.2d 633, 635 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Dec. 20, 1984) (citing *Brown v. Brown,* 316 N.W.2d 552 (Minn.1982)). Judicial decisions for tracing a current asset to its source are confirmed in Minn.Stat. § 518.54, subd. 5. The party claiming that current assets are traceable to non-marital property has the burden of proof. *See Stroh v. Stroh,* 383 N.W.2d 402, 407 (Minn. Ct.App.1986).

■ Appellant's contention that the homestead property is traceable to his equity interests in the nursing home property is unsupported by clear evidence in the record. *See Kottke,* 353 N.W.2d at 636 (trial court presented with detailed evidence illustrating the property in question was traceable to a nonmarital source). Here, the trial court was not presented with any evidence documenting appellant's purchase of the nursing home property. Although the nursing home property was subject to various mortgages at the time of purchase, no evidence, other than appellant's testimony, was presented showing whether or not the mortgages were satisfied. While the trial court's findings indicate that the nursing home property was sold twice prior to the sale to Longpre, appellant failed to apprise the court as to the existence or terms of such sales.

Purchase terms of the Warba property are equally vague. The trial court was not given the purchase price of lots five and eight. Furthermore, appellant cannot state what portion of the purchase price was financed by his son's social security checks. The fact that appellant originally wanted the Warba property placed in his and his son's name suggests the son's contribution was significant.

Because appellant failed to provide the trial court with clear and convincing evidence tracing the marital homestead property to his non-marital interest in the nursing home property, he cannot claim the trial court erred in its property division. *Stroh,* 383 N.W.2d at 407. Appellant does correctly argue that recent case law provides a method for apportioning equity in non-marital property. *See Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn.1981); *Edlund v. Tennis,* 392 N.W.2d 600 (Minn.Ct. App.1986). What appellant fails to recognize is that in these cases, the trial court was presented with detailed financial information on which to base its calculations, although in *Edlund* the parties' failure to present evidence as to the mortgage balance due on the homestead at the time of marriage resulted in a reversal of the property division award.

Appellant was provided an opportunity during trial to provide the court with evidence tracing marital property to a nonmarital source. In light of the presumption in favor of marital property and appellant's failure to meet his burden of proof, the trial court did not abuse its discretion in its division of property.

2. Appellant also contends the trial court erred in its maintenance award for respondent. The standard of review on appeal from a trial court's determination of a maintenance award in a dissolution action is whether the trial court abused the discretion accorded to it. *Krick v. Krick,* 349 N.W.2d 350, 352 (Minn.Ct.App.1984). The facts of each case must be examined to ascertain whether an abuse of discretion exists. *See Cooper v. Cooper,* 298 Minn. 247, 250, 214 N.W.2d 682, 685 (1974).

■ Minn.Stat. § 518.552, subd. 2 (Supp. 1985) lists several factors for consideration in determining a maintenance award. No single statutory factor is dispositive. *Erlandson v. Erlandson,* 318 N.W.2d 36, 39 (Minn.1982). The basic consideration in awarding spousal maintenance and determining the amount is the financial need of the spouse receiving maintenance and the ability to meet that need, balanced against the financial condition of the spouse providing the maintenance. *Krick,* 349 N.W.2d at 352.

■ Appellant's contention that Minn. Stat. § 518.552 requires respondent to change her vocation for a more lucrative position is unsupported by the language of

the statute. Minn.Stat. § 518.552, subd. 2(b) refers to "the time necessary to acquire sufficient education * * * to find appropriate employment." *Id.* This factor does not require a change in vocation. Rather, the factor addresses the situation where the spouse receiving maintenance lacks job skills and must receive an education before attempting to find employment. *See, e.g., Marshall v. Marshall,* 350 N.W.2d 463 (Minn.Ct.App.1984) (spouse entitled to maintenance while pursuing a law degree in order to eventually become self-supporting).

While it would have been preferable to allow the trial court an opportunity to address appellant's contention that it erred in its maintenance award through a motion for amended findings, we are not foreclosed from considering this issue since appeal was properly taken from the judgment. We conclude that the evidence sustains the findings of fact and the findings sustain the conclusions of law and the judgment. *See Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

### DECISION

The trial court did not abuse its discretion in its division of property and did not err in its maintenance award.

Affirmed.