In re the Marriage of Rosanne Lee
GUMMOW, petitioner, Appellant,

v.

Gary Donald GUMMOW, Respondent.

Nos. C8–83–1850, C9–84–1009.

Court of Appeals of Minnesota.

Oct. 16, 1984.

Bjorn J. Ulstad, St. Paul, for appellant.

Lawrence D. Olson, St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

In this marriage dissolution proceeding, Gary Gummow appealed from the judgment and decree, citing as error the division of property. After that appeal was taken, the trial court entered an order partially amending the judgment and decree as to the division of property. Rosanne appealed from that order, claiming the trial court did not have jurisdiction to enter it. We consolidated the appeals, and now reverse and remand for an equitable distribution of property based on all the statutory factors.

## FACTS

Rosanne and Gary Gummow were married on December 9, 1972. No children were born to them during their marriage. During most of the marriage, Rosanne's son from a previous marriage lived with them. Rosanne received child support of $150 per month from her former husband irregularly throughout the marriage. Gary paid $100 per month for the support of his two children from a previous marriage irregularly throughout the marriage.

At the time of Rosanne and Gary's marriage, Rosanne had about $5,000 in savings and checking accounts and other assets worth about $12,000. Gary had an automobile, various other nominal assets, and many debts.

Rosanne worked as a teacher throughout the marriage. She earned $10,001 in 1972 and received yearly increases. In 1981 she earned $27,013. Her average annual income during the marriage was $16,560. In lieu of social security, Rosanne made contributions, supplemented by her employer, to the Minneapolis Teachers Retirement Fund Association. Her contributions, together with those of her employer, totalled $28,718.62 during the marriage.

Gary was self-employed as a barber during the marriage. He earned $2,834 in 1972. His reported income fluctuated from zero, in 1975 and 1976, to $11,810, in 1981. His average annual income during the marriage, as reported, was $5,407.

At the time of the separation, the parties owned a home and a lake cabin. The home was built for the parties in 1974 for $37,650. Rosanne testified, and the trial court found, that the down payment of $3,800 came from Rosanne's non-marital funds. Both Gary and Rosanne worked to finish the partially-constructed home, and it is now worth $91,000, subject to mortgages of $29,890.53 and $3,728.80.

The land for the cabin was purchased in 1976 for $8,500. The two hundred dollar earnest money and additional three hundred dollar down payment, the trial court found, came from Rosanne's non-marital property. The balance of the land purchase price, as well as construction costs of $10,250, were financed by loans from the Teachers Credit Union. The parties stipulated that the cabin has a market value of $57,995. It is unencumbered by a mortgage.

After a trial, the court divided the parties' home and cabin by using a formula which traced the non-marital contributions to the acquisition of the assets and treated the remainder of the equity as marital property, as approved by the supreme court in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981). The court divided the marital portion of the equity in the home and cabin based upon his finding that Rosanne had made 80% of the financial contributions to the marriage and Gary had made 20%. Eighty percent of the marital portion of the equity was awarded to Rosanne,

along with the amount of the equity traceable to her non-marital contribution, and twenty percent of the marital portion of the equity was awarded to Gary. Rosanne also received 100% of her vested pension rights.

Gary moved for amended findings. The motion was heard on September 20, 1983. On November 18, 1983, Gary filed an appeal from the original judgment and decree. With Rosanne's acquiescence, Gary asked this court for a stay of the appeal so that the trial court could rule on the pending motion. We issued an order staying the appeal until January 3, 1984. When the trial court had not ruled on the motion by that date, Gary requested an additional stay, which we denied. On May 3, 1984, the trial court issued an order amending the judgment to award Gary a credit for one-half of Rosanne's pension, less half the amount of social security taxes paid by Rosanne on Gary's behalf, that credit to be paid Gary from the proceeds of the sale of the cabin. Rosanne appealed from that order, claiming the trial court had no jurisdiction to enter it.

We consolidated the two appeals. After the consolidation, Rosanne moved that portions of Gary's reply brief be stricken as raising new issues not raised in his original brief or in her brief. We postponed a decision on the merits of that motion to be decided with the rest of the issues presented.

### ISSUES

1. Did the trial court have jurisdiction to enter an order amending the judgment and decree after an appeal had been taken?

2. Did Gary raise new issues in his reply brief?

3. Did the trial court err in dividing the marital property?

### ANALYSIS

1. Rosanne contends that the May 3, 1984, order of the trial court purporting to amend the judgment and decree is null and void because the trial court had lost jurisdiction to this court when Gary filed his notice of appeal and this court denied an additional stay of the appeal. We agree. As we stated in *Evans v. Blesi*, 345 N.W.2d 775 (Minn.Ct.App.1984), an order entered after an appeal is taken, even if not really late, is of no effect since jurisdiction shifts to this court once an appeal is perfected. Further, parties may not waive lack of subject matter jurisdiction and may not consent to a court acting when it has no subject matter jurisdiction. *See* Minn.R.Civ.P., Rule 12.08(3). The trial court therefore had no jurisdiction to amend the judgment and decree after an appeal from the judgment had been taken, and its order of May 3, 1984, is of no effect.

2. Rosanne's motion to strike portions of Gary's reply brief alleges that Gary did not claim the trial court's findings of fact were erroneous until his reply brief. Were this true, we would strike those portions, since new matter may not be raised in a reply brief. Gary's initial brief, however, argues that certain of the court's findings were erroneous; the reply brief merely adds that the statement of the facts *in Rosanne's brief* was erroneous. Raising alleged inaccuracies in the facts presented in respondent's brief is proper in a reply brief.

3. Finally, we reach the merits of Gary's appeal. The trial court first awarded Rosanne her nonmarital interest in the home and the cabin according to the formula in *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981), and then divided the home and the cabin, two of the parties' three major assets, by awarding 80% of the marital equity to Rosanne and 20% to Gary. It did this based upon its findings that Rosanne had made at least 95% of the deposits to the parties' joint checking account and, with her son, had also provided about 85% of the noncontracted portion of the completion and improvement of the parties' home and cabin. The third major asset, Rosanne's pension plan, was awarded to Rosanne in its entirety.

Under Minn.Stat. § 518.58 (1982), the court must make "a just and equitable division of the marital property of the parties without regard to marital misconduct." The court must base its findings supporting the division upon

> all relevant factors, including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contributions of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife.

Minn.Stat. § 518.58.

 The evidence presented at trial supported the trial court's findings on the proportion of income earned by Rosanne. The evidence also indicated, however, that Gary was employed during the marriage with the exception of only several months in 1976 and 1977. The trial court's award of assets in strict proportion to the income earned by each party during the marriage was error since the statutory presumption of "substantial contribution" by each spouse was not rebutted. While there is no requirement that the division of property in a case such as this be mathematically equal, it must be equitable. *Stassen v. Stassen,* 351 N.W.2d 20 (Minn.Ct.App.1984) citing *Ruzic v. Ruzic,* 281 N.W.2d 502 (Minn.1979). A party who contributed less financially during marriage may be entitled to more than his or her exact monetary contribution at dissolution and is entitled to have the other statutory factors such as needs, employability, and estate taken into consideration. To hold otherwise would unfairly penalize spouses, traditionally wives, who chose not to work outside the home for wages during the marriage but concentrated instead on being full time homemakers and attending to the needs of spouses and children. A working spouse, after several years of marriage, can commonly show that he or she grossed several hundred thousand dollars in income during the marriage. If the other spouse had not worked outside the home during the marriage, a division of property based solely on percentages of financial contribution would have disastrous results. The conclusive presumption of substantial contribution contained in Minn.Stat. § 518.58 is directly aimed at preventing that inequity. The presumption must be applied fairly to both women and men. We thus cannot allow Gary to be left with only a small fraction of the marital income. Absent findings related to other properly · identified statutory factors, a division of marital property based solely on the amount of income earned during the marriage is improper.

 In addition, Gary alleges that the proportion of the cabin's value awarded to Rosanne as her non-marital property is too high, since it was based on an erroneous initial cost. We agree. The trial court calculated Rosanne's non-marital share by figuring she contributed $500 to the cabin's cost of $8,500, or 5.88%. The evidence showed, however, that the lot alone cost $8,500, and loans totalling $10,250 were taken out to finance construction of the cabin itself. Rosanne's non-marital share should thus be based upon her paying $500 of the *total* cost of the cabin, or $18,750.

**DECISION**

Reversed and remanded for an equitable division of assets, including Rosanne's pension fund.