**In re the Marriage of Gary Lawrence DOERING, Petitioner, Respondent,**

**v.**

**JoAnn Mary DOERING, Appellant.**

**No. CO-85-1782.**

Court of Appeals of Minnesota.

April 22, 1986.

■■■

John C. Quam, Irvine, Ramstad, Quam, Briggs, Irvine & Jordheim, P.A., Detroit Lakes, for respondent.

Oscar J. Sorlie, Jr., Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

JoAnn Doering appeals from an amended judgment and partial denial of her motion for amended findings or for a new trial. She contends the trial court erred in its distribution of property. We disagree and affirm.

## FACTS

Appellant JoAnn Doering and respondent Gary Doering were married in April 1977. Appellant had eight children from a previous marriage, only four of whom were in her custody in 1977. In 1979, respondent adopted the youngest three. The parties began living apart in the fall of 1981 and finally separated in April 1982. Two years later, respondent filed a petition to dissolve the marriage. At the time of trial in April 1985, appellant was 49 years old and respondent was 40. Only the youngest child, age 12, remained at home.

Appellant remains employed as a part-time bus driver and occasionally works as a waitress. Her gross income in 1984 was approximately $10,000. During the marriage, respondent worked as a self-employed carpenter and as a foreman for a construction company. His 1983 gross income was over $12,000.

The parties also jointly operated a paper route during the marriage which earned approximately $5000 per year. There was conflicting testimony regarding what happened to these earnings. Appellant claimed the parties saved $15,000 and purchased bonds in 1980; respondent contended that no money was saved from the paper route and that the bonds purchased in 1980 were traceable to a nonmarital investment.

In October 1984, respondent suffered a heart attack. He has not worked since because of his heart condition, a 30-year history of diabetes, blindness in one eye and poor vision in the other. Although unable to deliver papers, he still keeps the accounts and pays the bills for his brother, who has taken over the route. Respondent had purchased a laundromat after the separation, which his father runs for him. At the time of trial, respondent's monthly income from the paper route, laundromat, and his investment property was approximately $337. Subsequent to trial, he was declared disabled and entitled to social security disability benefits.

The trial court granted appellant custody of the parties' minor daughter and ordered respondent to pay child support. Respondent was awarded the homestead which he owned before the marriage, his equity in the laundromat,[1] and the investment bonds. He also received his two automobiles, a 1983 Oldsmobile and a 1981 Dodge pickup. Appellant was awarded a 1976 Pontiac, which she had purchased after the parties had separated. The trial court's award of other personal property is not contested here.

## ISSUES

1. Was the division of property an abuse of discretion?

2. Was it an abuse of discretion not to award appellant a portion of the nonmarital property based on unfair hardship?

---

1. Although the laundromat is presumed to be marital property because acquired during marriage, appellant does not contest its award to respondent.

## ANALYSIS

1. A division of marital property must be "just and equitable." Minn.Stat. § 518.-58 (1984). Absent an abuse of discretion, a trial court's division of property will not be disturbed. *Taylor v. Taylor,* 329 N.W.2d 795, 797 (Minn.1983). Related findings of fact must be upheld unless clearly erroneous. Minn.R.Civ.P. 52.01; *Nolan v. Nolan,* 354 N.W.2d 509, 512 (Minn.Ct.App.1984), *pet for rev. denied,* (Minn. Dec. 20, 1984).

Property acquired during marriage is presumed to be marital. Minn.Stat. § 518.-54, subd. 5 (1984). This presumption may be overcome by showing that the property was acquired before the marriage or was "acquired in exchange for or is the increase in value of property" acquired before the marriage. Minn.Stat. § 518.54, subd. 5(c).

*Homestead*

■ The homestead was built and owned by respondent prior to the marriage. It is unencumbered and title remains in respondent's name. Respondent established to the satisfaction of the trial court that the home was nonmarital property and an asset wholly owned by him.

Appellant contends the trial court's award of the entire homestead to respondent fails to consider improvements made during the marriage. These improvements included the addition of a dining room and installation of carpeting, insulation and storm windows, and extra cabinets and paneling in the kitchen. Respondent testified the improvements cost only about $800 because he performed the work himself and used materials he had on hand. Appellant disagreed, contending that the improvements cost $2500 and that the parties had taken out a $2000 loan on which she paid $100 per month.

The trial court was persuaded by respondent's testimony and concluded:

The evidence * * * discloses that the addition to the home was done mostly with left over materials and was done by [respondent's] own labor. The money cost of the improvements was approximately $600 to $700.

"Where evidence relevant to a factual issue consists entirely of conflicting oral testimony, an appellate court will disturb the trial court's ultimate finding only in the most unusual circumstances." *Wehner v. Wehner,* 374 N.W.2d 569, 572 (Minn.Ct.App. 1985). Given the conflicting testimony, the trial court's finding that the cost of the improvements was negligible is not clearly erroneous. Appreciation, if any, in the value of this asset is thus not due to the parties' joint efforts. The trial court properly awarded the entire homestead to respondent.

*Bonds*

■ Appellant contends that the trial court erred in characterizing $15,000 in bonds as nonmarital investments and awarding this asset to respondent. In September 1980, an $11,500 capital reserve fund was opened and registered to the parties as joint tenants and in October 1980 this fund was used to purchase $15,000 in bearer bonds. This asset is presumed to be marital because it was acquired during the marriage. Minn.Stat. § 518.54, subd. 5.

■ A spouse seeking to trace an asset to a nonmarital source is not held to a "strict tracing" standard, but need only show by a preponderance of the evidence that the asset was "acquired in exchange for" nonmarital property. *Kottke v. Kottke,* 353 N.W.2d 633, 636 (Minn.Ct.App. 1984), *pet for rev. denied,* (Minn. Dec. 20, 1984).

■ Respondent claimed that the $11,-500 reserve account was mistakenly issued to the parties as joint tenants. He testified that he opened the reserve account in September 1980 after selling a time certificate which was traceable to insurance proceeds he had received following a 1976 car accident. He used this account to purchase $15,000 in bearer bonds. Appellant testified she was "told" this $15,000 represented money the parties had saved from the joint paper route. When questioned further, she hesitated and indicated she was no longer sure the money came from the parties' earnings.

The trial court accepted respondent's tracing of the $15,000 in bonds to a nonmarital source. In its findings of fact, the trial court found:

> That at the time of the marriage [respondent] was the owner of over $30,000 in investment bonds but that because of sale to pay various expenses he now owns about $10,000.

In a memorandum attached to its amended judgment, the trial court reiterated that at the time of the marriage, respondent "had in various bonds, in excess of $30,000 which he had received by way of a settlement in a motor vehicle accident prior to the marriage."

As the trier of fact, the trial court has the opportunity to observe the parties and to appraise their testimony, credibility, general character, and disposition. *See Wilson v. Wilson,* 229 Minn. 126, 128, 38 N.W.2d 154, 156 (1949). Given this unique perspective, the trial court's finding that the bonds were traceable to a nonmarital source must be upheld as not clearly erroneous.

### Automobiles

■ Appellant challenges the trial court's failure to award her one of respondent's automobiles. At trial, respondent had testified that during the marriage he traded in his automobiles every few years and used the interest income from his nonmarital investments to purchase new automobiles. The trial court awarded respondent his 1983 Oldsmobile valued at $8000 with a loan balance of $2500 and his 1981 Dodge pickup valued at $2800. Appellant received her 1976 Pontiac. No specific findings were made as to whether respondent's automobiles were traceable to nonmarital assets.

Nevertheless, the award of automobiles must be upheld if "just and equitable." Minn.Stat. § 518.58. Appellant was awarded her own automobile and was not left without transportation. The award of automobiles to their respective owners was not an abuse of discretion and must be upheld.

■ Although we might have distributed the parties' property differently, great deference must be given the trial court's distribution of property. A reviewing court must affirm a property distribution that has an "acceptable basis in fact and principle even though we might have made a different disposition of the problem." *Rohling v. Rohling,* 379 N.W.2d 519, 522 (Minn.1986) (quoting *Bollenbach v. Bollenbach,* 285 Minn. 418, 426–27, 175 N.W.2d 148, 154 (1970)).

Such reasonable basis is present here. It is clear the trial court attempted to restore to each party the property that each brought into the marriage. *Kreidler v. Kreidler,* 348 N.W.2d 780, 784 (Minn.Ct. App.1984). Such an approach has been considered equitable, especially when the marriage was of short duration. *See Lenzmeier v. Lenzmeier,* 304 Minn. 568, 231 N.W.2d 71 (1975); *Montgomery v. Montgomery,* 358 N.W.2d 169, 174 (Minn.Ct. App.1984).

2. Appellant finally argues that even if the trial court correctly characterized the bonds and homestead as nonmarital, it erred in failing to find unfair hardship so as to award her a portion of these assets. She argues that the property division results in unfair hardship because after the parties married, she gave up a trailer home and lot which she owned by allowing someone to take over the monthly payments. The proceeds from the sale of the lot were used by appellant to pay off a loan owed to her brother.

■ Minn.Stat. § 518.58 (1984) provides that a court may apportion nonmarital property if it finds unfair hardship:

> [B]ased on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party.

*Id.* Such a determination is within the discretion of the trial court. *Rutten v. Rutten,* 347 N.W.2d 47, 51 (Minn.1984).

Given the relatively short duration of the marriage, appellant's age and present employment, and respondent's disability, the trial court did not abuse its discretion in failing to divide nonmarital assets. *See Johnson v. Johnson*, 372 N.W.2d 832, 835 (Minn.Ct.App.1985), *pet for rev. denied*, (Minn. Oct. 24, 1985).

## DECISION

The trial court's division of property has a reasonable basis in fact and principle and was not an abuse of discretion.

The trial court did not abuse its discretion in failing to apportion nonmarital property because of unfair hardship.

Affirmed.