In re the Marriage of Darlene L. NASH, Petitioner, Appellant,

v.

William Leroy NASH, Respondent.

No. C3-85-1887.

Court of Appeals of Minnesota.

June 17, 1986.

Review Denied Aug. 20, 1986.

Lawrence D. Olson, Lawrence D. Olson & Associates, Roseville, for appellant.

William M. Drinane, Peterson, Bell & Converse, St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from a final judgment dissolving a 32–year marriage. Darlene Nash alleges error in valuation and division of marital assets. We reverse and remand.

## FACTS

Darlene Nash was 52 years old and William Leroy Nash was 53 years old at the time of trial. Their four children are now adults.

Darlene was a traditional homemaker during the marriage. She has a high school degree and first began working full-time just before the parties separated. She now works as a secretary for Deluxe Check Printers and nets $955 per month. She receives health insurance, purchases life insurance, and started payments in the stock purchase plan at the time of trial. She will soon start to accumulate pension benefits but had none at the time of trial. She presently resides in the homestead. She testified to monthly expenses of $1,400 which will increase to $1,600 when she is forced to move to an apartment upon sale of the house.

William has driven trucks for Murphy Warehouse Co. for 30 years. The trial court found that he nets about $2,015 per month working voluntary overtime of about 11 hours per week. However, the husband's actual net monthly pay for 1985 was $2,200. In 1984 he grossed $40,000 but because of losses on a condominium investment his net income was $22,000. He has vested pension rights and will draw an income of about $625 per month if he retires at age 57, or $775 per month if he retires at age 60. The trial court found the present value of the husband's pension rights to be $19,142. No findings were made with respect to the husband's expenses; however, he pays $450 per month for rent and food to the woman he is living with, plus his long distance phone bills.

The parties stipulated that the homestead's net sale value was $77,500. The trial court granted the husband a $32,500 lien on the house and directed that it be paid in 90 days or the homestead sold in order to satisfy the lien.

The wife's mother advanced the parties $5,000 for down payment on a condominium in White Bear Lake in 1983. William stopped making payments on the condominium during the separation and it is now in foreclosure. The trial court awarded each party one-half interest in the condominium as tenants in common.

The trial court awarded Darlene her IRA, life insurance, her stock and pension rights (although she had none), a 1978 Buick, personal property and household goods, bank accounts in her name, one-half interest in the condominium, and the balance received upon sale of the homestead after William's $32,500 lien is satisfied. She was denied maintenance and attorney's fees. William was awarded his IRA; life insurance; a 1972 pick-up; a boat, motor and trailer; his pension rights; household furnishings and personal property in his possession; bank accounts in his name; the parties' 1983 and 1984 tax refunds totalling $5,482; one-half interest in the condominium; and the $32,500 lien on the homestead.

## ISSUES

Did the trial court abuse its discretion in:

1. failing to award permanent maintenance and to provide life and health insurance for the wife?

2. valuing the husband's pension and allocating all of it to him?

3. failing to award the wife a nonmarital interest for inherited funds she invested in a remodeling project?

4. dividing the marital property?

5. failing to award the wife attorney's fees?

## ANALYSIS

1. *Maintenance*

■ The trial court findings fail to address the relevant statutory factors regarding an award of maintenance. *See* Minn.

Stat. § 518.552 (1984). "The court must consider the factors outlined in Minn.Stat. § 518.552, subd. 2." *Leach v. Leach,* 356 N.W.2d 378, 379 (Minn.Ct.App.1984). In addition, the court's findings which are relevant to the determination of this issue are not supported by the record.

The evidence indicates that the wife in this long-term marriage who has little work experience is entitled to maintenance. *See Erlandson v. Erlandson,* 318 N.W.2d 36, 39 (Minn.1982).

The factors supporting an award of permanent maintenance as set forth by the supreme court in *McClelland v. McClelland,* 359 N.W.2d 7 (Minn.1984) and *Abuzzahab v. Abuzzahab,* 359 N.W.2d 12 (Minn. 1984), should have been addressed by the trial court. Compared to the wives in either of those cases, where rehabilitative maintenance was found appropriate, Mrs. Nash has less education, is older, closer to retirement with no accumulated pension benefits, fewer job skills, less property and according to her own uncontradicted testimony, is unlikely to obtain any promotions during the balance of her work life.

Here, although the wife sought and obtained full-time employment when her husband told her of the divorce, she suffered a substantial drop in her standard of living. Her testimony of expenses of $1,400 to $1,600 per month was unrefuted, yet the trial court found her necessary living expenses were $750 per month. Her present income of $950 per month does not allow her to maintain her standard of living or provide for her living expenses without depleting her net share of the homestead— the only substantial asset other than the husband's pension. *See* Minn.Stat. § 518.-552, subd. 2; *Erlandson,* 318 N.W.2d at 39 (a court generally compares the monthly expenses to net take home pay to assess the need for maintenance).

The husband nets about $2,200 per month from his long-term job, is building a retirement pension and enjoys other benefits. He testified to spending $450 per month for rent and food. He paid temporary maintenance during the parties' sepa-

ration when their relative situations were the same. The husband meets the capability requirements of Minn.Stat. § 518.552, subd. 2(f). We reverse the trial court's determination on this issue since it is contrary to the facts on record. *See Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

■ The wife also challenges the trial court's failure to require her husband to provide her with health insurance and secure maintenance with life insurance. Maintenance here should be secured by a life insurance policy on the husband. The trial court findings regarding health insurance are supported by testimony that the wife is presently covered by her employer. Therefore, the court did not err when it chose not to require the husband to provide her with health coverage through his employer.

### 2. *Pension valuation and division*

■ The trial court erred in valuing the husband's pension because it did not adopt any value testified to as reliable by the only expert testifying at trial. The trial court's exercise of its discretion in valuing and distributing an asset "should be supported by either clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Ronnkvist v. Ronnkvist,* 331 N.W.2d 764, 766 (Minn.1983). Because of the parties' comparative financial situations, the trial court erred by not specifically designating one-half of this major asset to Darlene. *See Gummow v. Gummow,* 356 N.W.2d 426, 429 (Minn.Ct.App.1984).

The only expert who testified to the value of the pension stated its present worth was $59,641, assuming retirement at age 57, or $32,456, assuming retirement at age 65, and a discount factor of 7½%.

The trial court erred by assuming age 65 retirement, *see Hein v. Hein,* 366 N.W.2d 646, 650 (Minn.Ct.App.1985) (determination of retirement age arbitrary when not supported by the record or findings), and in not adopting the expert's opinion on value of the pension in the absence of any other

credible evidence. *See Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (the trial court's valuation should be sustained if it falls within "the limits of credible estimates made by competent witnesses").

The trial court valuation of $19,142 was produced when appellant's expert on cross-examination was required by the trial court to use a 10½% discount factor, which he stated was inappropriate. He was also required to convert female mortality tables to male tables by a rule of thumb that is "not totally accurate at every age and at every interest rate."

■ The record discloses no incentive for William to work to age 65. The most equitable way to divide the pension, where the financial incentive for early retirement may otherwise cause the husband to receive a windfall at the expense of the wife, is to award the wife one-half of the present value of the husband's pension assuming age 65 retirement and order payment to her of ½ of any pension funds the husband receives before age 65. *See Taylor v. Taylor,* 329 N.W.2d 795, 798–99 (Minn.1983); *see also King v. King,* 368 N.W.2d 317 (Minn.App.1985) (where information is available to this court, we may make the findings of pension valuation without remanding for further proceedings).

### 3. *Nonmarital property*

■ Darlene testified that she inherited $6,600 in August 1980. She had receipts demonstrating that $5,142 was invested in remodeling the parties' homestead immediately thereafter. She has met the tracing requirement and is entitled to $5,142 in satisfaction of her nonmarital investment. *See Kottke v. Kottke,* 353 N.W.2d 633, 636 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984) ("the trial court lawfully views as non-marital property a portion of the homestead 'readily traceable' to an earlier inheritance").

■ The trial court found that the inherited funds were deposited into a joint account, commingled with the parties' other funds, and "used for general family purposes." Simply routing the funds through a joint account "does not transform nonmarital property into marital property." *Montgomery v. Montgomery,* 358 N.W.2d 169, 172 (Minn.Ct.App.1984).

The parties' earnings of approximately $3,000 per month were used to cover all general family expenses and the inheritance was spent on home remodeling materials about two weeks after it was received. Tracing does not require a party to produce the serial numbers of the dollar bills used. The trial court's denial of a credit for Darlene's nonmarital interest was clearly erroneous.

Darlene concedes the *Schmitz* formula cannot be applied here to award her appreciation on her investment since the value of the homestead before the improvements cannot be determined. *Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981).

### 4. *Division of property*

■ The trial court failed to honor the parties' stipulation granting Darlene an $800 judgment for maintenance arrearages under the temporary order, failed to award her any portion of the 1983 and 1984 tax refunds, and ordered the homestead sold within 90 days to satisfy William's lien.

The trial court erred in awarding the $3,497 in 1984 tax refunds solely to William. All assets in existence at dissolution are marital assets subject to equitable division between the parties. *Ronnkvist,* 331 N.W.2d at 766.

The court awarded William the 1983 tax refunds because it found that he made payments on the condominium. The temporary order required him to make condominium payments just as Darlene was required to make payments on the homestead. William received rent from his mother-in-law, offsetting a portion of these payments, and he deducted the losses on his tax returns. He violated the court order and stopped making payments, letting the property fall into foreclosure while Darlene paid off the remaining $8,300 mortgage on the house. The trial court

erred in not equally dividing the tax refunds which constituted cash assets that the parties acquired during marriage. *See Bollenbach v. Bollenbach,* 285 Minn. 418, 428–34, 175 N.W.2d 148, 155–58 (1970).

The trial court made no findings to support the immediate sale of the homestead, despite the wife's request that she be allowed to continue to reside in it, at least until age 55 because of the capital gains taxes she would otherwise incur. *See Bollenbach* 285 Minn. at 435, 175 N.W.2d at 159 (disposition to wife of homestead may be appropriate under certain facts).

Sale of the homestead before the wife reaches age 55 significantly reduces the cash available for the wife since she must pay capital gains tax on the proceeds. I.R.C. § 121 (1982). There is no justification in forcing an immediate sale of the homestead since William is receiving 9% interest on his lien and has no pressing financial problems.

### 5. *Attorney's fees*

█ The wife incurred $5,000 in fees before this appeal. She has insufficient funds to pay her living expenses and has incurred substantial debt since the parties' separation to meet those expenses. There is no substantial property, aside from the homestead, available to pay the wife's fees, while William has sufficient income to pay.

Under these circumstances, the trial court abused its discretion in not awarding the wife fees as allowed under Minn.Stat. § 518.14 (1984). The record supports only one conclusion when the statutory factors are considered. *See Schultz v. Schultz,* 383 N.W.2d 379 (Minn.Ct.App.1986); *Kennedy v. Kennedy,* 376 N.W.2d 702, 705 (Minn.Ct.App.1985). On remand the trial court shall award the wife reasonable attorney's fees.

Darlene is also entitled to fees on this appeal of $400.

### DECISION

1. The trial court erred in denying Darlene maintenance without findings addressing statutory considerations. We remand to the trial court for a determination of an award of maintenance for an appropriate duration, secured by life insurance, with any pension benefits received by William before he turns 65 being credited to his maintenance obligation.

2. The trial court erred in valuing the husband's pension plan. We reverse and remand with directions that the trial court adopt the valuation of $32,456 for the pension, and award to Darlene one-half the present value of his pension assuming age 65 retirement and one-half of any pension income received by the husband prior to age 65 credited to his maintenance obligation.

3. The trial court erred in not awarding the wife $5,142 of her nonmarital property.

4. The trial court erred in failing to award the wife an $800 judgment for maintenance arrearages, one-half of the 1983 and 1984 tax refunds, and possession of the homestead at least until she reaches age 55. On remand the trial court shall enter judgment in favor of appellant against respondent for $800, grant appellant one-half the tax returns, reduce respondent's homestead lien by $5,142, the amount of appellant's nonmarital property, and award the wife reasonable attorney's fees.

Fees on appeal of $400 are also awarded.

Reversed and remanded with directions.