In Re the Marriage of Barbara J. **LARSON, Petitioner, Respondent.**

v.

**John R. LARSON, Appellant.**

**No. C3–87–453.**

Court of Appeals of Minnesota.

Sept. 29, 1987.

Carole M. Megarry, Lange & Megarry, P.A., Bloomington, for respondent.

Richard K. Hocking, Mardell Law Office, Apple Valley, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from the December 12, 1986, judgment and decree which dissolved a 27 year marriage. Husband appeals a provision which awarded respondent wife one-half of the present value of appellant's pension at retirement age 65 plus $402.00 per month in the event appellant retires before age 65. The $402.00 represents one-half of the monthly payment appellant would receive at age 55 should he retire on August 31, 1986. He contends on appeal that the trial court abused its discretion when it made the pension award to respondent. We affirm.

## FACTS

Appellant and respondent were married on July 18, 1959. The one child of the marriage had reached the age of majority at the time of the dissolution. Neither party requested an award nor reservation of maintenance. The court apportioned the marital estate giving the parties approximately equal shares including equal division of the proceeds from the sale of the homestead. None of these rulings is challenged on appeal.

For eighteen years prior to the dissolution, respondent, age 46, was employed as a banquet waitress. In 1985, her taxable income was $21,818.44. During the first half of 1986, her net monthly income ranged from $1,370.00 to $1,459.20. She has a vested social security benefit which matures at age 65. This is her only retirement benefit. At trial, appellant argued that respondent's social security entitlement should offset her claim to appellant's retirement monies. He does not raise this issue on appeal, however.

Appellant was 48 years old at the time of the final hearing. He has worked for the Bloomington School District since 1965, and attained the position of chief custodian. During 1985, his gross income was $23,944.48; his net monthly income was $1,629.44 at the time of trial. He had accrued twenty-six quarters of social security benefits through employment prior to 1965. Appellant's social security benefit will vest when he accrues four more quarters. Respondent's expert testified appellant could accrue four quarters in one year through other employment. Appellant also has a Public Employee's Retirement Association (PERA) pension, vested at the date of trial, based on over 21 years of service with his current employer. The division of the PERA pension is the subject of this appeal.

Respondent's expert was a Fellow of the Society of Actuaries from 1975, with eighteen and one-half years experience as an actuary. He testified that in valuing appellant's PERA pension, a "vested termination

assumption" method was utilized. The expert explained:

> [t]here's two parts to evaluation. The first part is to determine the amount of monthly payments that would be received. And the second stage then is to use those monthly payment amounts to determine a present value today, reducing to present value.

The information regarding the monthly payments was supplied by PERA. The expert testified that assuming appellant did not work after August 31, 1986:

> The amount of the monthly payment as of August 31, 1986, * * * would mature and become payable at age 55 and the amount is $804.33 per month.

The expert testified there was a major incentive for appellant to cease his PERA employment at age 55. In that event, appellant would receive 62% of his high-five yearly salary as his PERA pension. If he took other employment, he could subsidize his pension to the level of his pre-retirement salary. Furthermore, he would accrue in one year the four quarters needed to receive a social security pension. The expert opined:

> [the appellant] could become a double dipper in the pension sense and this is a very, very standard procedure by people that are covered by plans that are not covered by social security initially.

Moreover, if appellant continued to work to age 65, his pension would be a lower percentage of his salary at retirement age, and he would be ineligible for social security.

At the trial court's request, the expert calculated the present value of the pension excluding salary increases after the date of trial. The figures in the record were:

> retirement age 55.326, present value $72,392
>
> retirement age 57.326, present value $77,253
>
> retirement age 59.326, present value $69,162
>
> retirement age 60.326, present value $62,585
>
> retirement age 62.326, present value $51,274

> retirement age 65.326, present value $37,945

These figures included a pre-retirement death benefit.

The trial court refused to permit testimony from a person called by the appellant as an expert. Subsequently, the parties stipulated to a present pension value of $37,945, assuming a retirement age of 65, and also assuming continuance of appellant's current salary and death benefit. Appellant offered no further testimony as to the value of his pension.

Appellant claimed he could not afford to retire until age 65 and that he had no intention of changing his employment. Respondent, however, claimed appellant had talked often of retiring early to spend the winters in warmer climates and the summers fishing in northern Minnesota. The court discounted the testimony from both parties. There was no testimony on the average retirement age for chief custodians in the Bloomington School District.

## ISSUES

1. Did the court abuse its discretion when it awarded respondent one-half of the present value of the appellant's pension at retirement age 65 and in the event he retired before age 65, an additional one-half share of the monthly pension income he would receive if he were to retire immediately, although he would not receive any payments until age 55?

2. Should the respondent be awarded attorney fees upon appeal?

## ANALYSIS

### I.

■ A trial court has broad discretion when dividing marital property in a dissolution and will not be overturned on appeal except for a clear abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn. 1977). As with other marital property, the valuation and division of pension rights is a matter for the trial court's discretion. *DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn.1983). The trial court's method of

valuation is to be affirmed if it has an acceptable basis in fact and principle even though this court may have taken a different approach. *Castonguay v. Castonguay,* 306 N.W.2d 143, 147 (Minn.1981). While trial courts are· accorded broad discretion in both valuation and distribution of an asset, this discretion is not unlimited and must be based on clear documentary evidence or by comprehensive findings issued by the court. *Ronnkvist v. Ronnkvist,* 331 N.W.2d 764, 766 (Minn. 1983).

■ In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts of the particular case before it. *Taylor v. Taylor,* 329 N.W.2d 795, 798 (Minn.1983).

A pension can be valued by one of two methods:

1. the fixed percentage method, and
2. the present value method.

### Fixed percentage method

A fixed percentage of future payments under the plan is determined and paid to the non-employee spouse when received by the employee. This method was not chosen by the trial court.

### Present value method

"Present Value" discounts an award to that amount which *if presently received,* could be invested in order to yield the future sum.

\* \* \* \* \*. \*

Present value is the sum which a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future.

*DuBois,* 335 N.W.2d at 506 (emphasis in original). The trial court decided the present value method was appropriate in this case because there were escrowed marital funds which could be apportioned. The supreme court held:

This method is preferred when there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing undue hardship to either spouse and where testimony on valuation is not unduly speculative.

*Taylor,* 329 N.W.2d at 798–99.

[T]he placing of a present value on the pension benefits would seem advantageous to the parties because it accomplished a complete severing of their relationship and an avoidance of the continuous jurisdiction of the court.

*Durand v. Durand,* 367 N.W.2d 621, 625 (Minn.Ct.App.1985). Risks to both parties accompany present valuation of a pension because the value is dependent on the age at which the employee retires, a fact not known when the value is assessed. This court has stated:

The present value of husband's pension was dependent in large measure upon the retirement date chosen by the trial court. If the court had determined husband's pension value on the assumption that he would retire immediately \* \* \* and, instead, he had retired at age 65 \* \* \*, that valuation would have been high, and resulted in a marital asset windfall to wife. Conversely, if the court were to value husband's pension on the assumption that he would retire at age 65 and instead he decided to retire immediately \* \* \*, that valuation would have been low, with a resulting marital asset windfall to husband. Because of the risks here involved, it is critical that the trial court make a clear indication not only of the date of retirement it chose, but why it so chose.

*Id.*

■ The trial court found the testimony of both parties regarding retirement age was "self serving" and unhelpful. However, the opinion of respondent's expert was credible. He testified to the disincentive for appellant to continue to work with his PERA employer after age 55 and the incentive for him to seek employment elsewhere. The trial court declined to select age 55 as the retirement age because this could cause unfairness to appellant. The higher valuation which would be found using age 55 for retirement would have re-

sulted in all of the escrowed marriage funds being transferred to respondent in order to effect an equal division of all marital property. Therefore, a retirement age of 65 was selected because the trial court found no reasonable basis upon which to select a retirement age between 55 and 65.

Recognizing that actual age of retirement is largely within an employee's control, the court expressed concern that appellant would experience a windfall at respondent's expense should appellant retire early. Therefore, the court made an additional potential award based on this court's ruling in *Nash v. Nash*, 388 N.W.2d 777 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 20, 1986). The record in *Nash*, as in this case, disclosed no incentive for the husband to work to age 65. In that instance, we reversed the trial court selection of age 65 for purposes of present valuation and directed:

> The most equitable way to divide the pension, where the financial incentive for early retirement may otherwise cause the husband to receive a windfall at the expense of the wife, is to award the wife one-half of the present value of the husband's pension assuming age 65 retirement and order payment to her of [one-half] of any pension funds the husband receives before age 65.

*Id.* at 781.

Additionally, this court reversed the denial of maintenance to Mrs. Nash and directed a determination of the amount and duration of an award upon remand. Furthermore, we directed that the award to Mrs. Nash of one-half of any pension income received by her husband prior to age 65 was to be credited to his maintenance obligation. *Id.* at 782. Thus, because one-half of Mr. Nash's pre–65 pension benefits would be credited against his maintenance obligation, Mrs. Nash would not receive a windfall from the pension benefits which accrued after the date of dissolution. In this case, although there is no award of maintenance, the trial court nonetheless also guaranteed that respondent will not receive a windfall. Respondent's receipt of pre–65 pension benefits paid to appellant is fixed at one-half of $804.33. Only appellant will benefit from the increase in that figure which is occasioned by his PERA employment after the dissolution. Finally, any additional payment to respondent as a result of appellant's pre–65 retirement will terminate when appellant reaches 65.

## II.

■ By request made at the end of her brief, respondent asks for an award of attorney fees upon appeal, alleging that the appeal is frivolous. We note, first, that this appeal is not frivolous. Second, we note that an award of attorney fees under Minn.Stat. § 518.14 may be available even in non-frivolous appeals. However, after consideration of all the circumstances here present, and especially in consideration of the fact that respondent has not presented to us any information upon which we could base a section 518.14 award, we decline to award attorney fees on appeal.

## DECISION

The trial court did not err when it awarded respondent one-half of appellant's pension based on present value at retirement age 65, plus $402 per month in the event of his early retirement, terminating when husband reaches age 65. Respondent's request for attorney fees on appeal is denied.

Affirmed.