In re the Marriage of Catherine A. RISK, on behalf of the Estate of Mary Elizabeth MILLER, petitioner, Respondent,

v.

**Jarrin E. STARK, Appellant.**

**No. A10–126.**

Court of Appeals of Minnesota.

Sept. 7, 2010.

John P. Guzik, Guzik Law Office P.A., Roseville, MN, for respondent.

Charles A. Krekelberg, Chad D. Miller, Krekelberg, Skonseng & Hastings PLLP, Pelican Rapids, MN, for appellant.

Considered and decided by
KLAPHAKE, Presiding Judge;
TOUSSAINT, Chief Judge; and
SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

In this bifurcated marriage-dissolution proceeding, after the district court dissolved the parties' marriage but before it divided their property, the former wife died. Appellant challenges the district court's denial of his motion to dismiss the case on the basis that the former wife's death abated the dissolution proceeding and that the district court therefore lacked jurisdiction to divide the parties' property. Appellant also challenges the district court's property division. We affirm.

## FACTS

At the time of their marriage in March 2002, Mary Elizabeth Miller and appellant Jarrin E. Stark were ages 60 and 61. On May 12, 2008, when Miller was terminally ill with pancreatic cancer, she commenced a marriage-dissolution proceeding against appellant. On May 28, Miller moved the district court to bifurcate the proceeding because of her illness. Arguing that he received insufficient notice of the hearing, appellant objected to bifurcation. In response to appellant's objection to bifurcation, the district court granted appellant the right to submit a brief on the issues attendant to bifurcation following the May 28 hearing. Appellant submitted nothing following the hearing and, on August 13, the district court entered a judgment of marriage dissolution, reserving the issue of property division.

On August 19, 2008, Miller died, and appellant moved to dismiss the proceeding on the basis that Miller's death abated the dissolution proceeding and the district court lacked jurisdiction to divide the parties' property. The court denied appellant's motion to dismiss and granted the motion of respondent Catherine Risk, Miller's personal representative, to be substituted for Miller as petitioner in the case. After a trial on the issue of property division, the district court made detailed findings of fact and conclusions of law, which are summarized below.

Miller entered the marriage with more than $300,000 in nonmarital assets. She inherited additional nonmarital funds during the marriage in the amount of $26,949.30. Appellant had only nominal income throughout the marriage, and the parties relied primarily on Miller's nonmarital assets to meet their living expenses. Appellant purchased and refinanced the parties' homestead before the marriage and had a nonmarital interest in the homestead of $200 ($67,200 value of homestead at time of marriage less $67,000 encumbrance against homestead at time of marriage equals $200). The present value of the homestead was $108,900, resulting from $41,700 in appreciation during the marriage, which appreciation is marital property under *Nardini v. Nardini*, 414 N.W.2d 184, 195 (Minn.1987).

The parties purchased two other properties during their marriage: hunting land in Todd County and farm property in Otter Tail County (Amish Farm). At the time of the marriage dissolution, the hunting land was worth $99,900 with a net value to the parties of $54,900, after deducting a mortgage encumbrance of $45,000. The $25,000 down payment on the parties' purchase of the hunting land was traceable to Miller's nonmarital assets and therefore constituted Miller's nonmarital interest in the land. The balance of

$29,500 constituted marital appreciation.[1]

Miller contributed $25,387.14 of her nonmarital property toward the purchase of the Amish Farm: $12,670.99 cash to pay the earnest money and down payment, plus mortgage payments totaling $12,716.15. The parties sold the Amish Farm and received net sale proceeds of $35,847. The district court concluded that $25,387.14 of the proceeds remained Miller's nonmarital property, while the balance of $10,459.86 constituted marital property.

The parties deposited the $35,847 in Amish Farm sale proceeds into their joint money-market account. Miller also deposited into that account an inheritance of $26,949.30 that she received during the parties' marriage.

Shortly before Miller commenced the dissolution proceeding, and without Miller's knowledge or consent, appellant withdrew $63,096.45 from the parties' joint money-market account. Of the amount withdrawn, $10,459.86 constituted marital property and $52,636.59 constituted Miller's nonmarital property. Appellant returned $8,000 to the money-market account, but could not account for the remaining $55,096.45, although he testified that he gambled away $40,000. The district court expressly discredited appellant's testimony, finding that appellant had "dissipated, hidden, secreted, or otherwise disposed of" the unaccounted-for $55,096.45.

The district court valued the marital property of appellant and Miller at $81,659.86, consisting of $41,700 in appreciation from the homestead, $29,500 in appreciation from the hunting land, and $10,459.86 in proceeds from the sale of the Amish Farm. The court awarded to appellant the $55,096.45 in money-market funds withdrawn by him, but because $44,636.59 of that amount constituted Miller's nonmarital property, the court credited that amount against appellant's portion of the marital property. The court accordingly awarded Miller's estate both the homestead and hunting land.

This appeal follows.

## ISSUES

I. Did the district court err by not dismissing the marriage-dissolution proceeding after Miller's death?

II. Did the district court err in its characterization of certain property as Miller's nonmarital property?

III. Did the district court err by finding that appellant improperly disposed of money from the parties' joint money-market account and, accordingly, offsetting appellant's marital-property award?

## ANALYSIS

### I. Motion to Dismiss

■ Appellant first argues that the district court erred by not dismissing the dissolution proceeding after Miller's death.

■ Survival of a party's claims after death is governed by statute in Minnesota. The general rule is that all "causes of action by one against another, whether arising on contract or not, survive to the personal representatives of the former and against those of the latter." Minn.Stat. § 573.01 (2008). The statute excepts only "cause[s] of action arising out of injury to the person," stating that such claims "die[ ]

---

1. In what appears to be an arithmetical or typographical error, the district court did not account for the remaining $400 of value. We conclude that the difference is de minimis in the context of this proceeding. *See Wibbens v. Wibbens,* 379 N.W.2d 225, 227 (Minn.App. 1985) (refusing to remand for a de minimis error).

with the person of the party in whose favor [they] exist[ ]." *Id.* Otherwise, the survival rule is broadly inclusive. *See Pearson v. Bertelson,* 244 Minn. 224, 227, 69 N.W.2d 621, 624 (1955) (stating that section 573.01 applies to the survival of "all causes of action" not specifically excluded); *see also, e.g., Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978) (concluding that paternity actions survive under section 573.01).

■ But "a suit for divorce abates at the death of either party, as the marriage relation sought to be dissolved no longer exists." *Tikalsky v. Tikalsky,* 166 Minn. 468, 470, 208 N.W. 180, 180 (1926). In other words, "[w]hen a party to a marriage *that has not been dissolved* dies, the marriage relation 'no longer exists' and, as a result, any then-pending dissolution proceeding abates." *Estate of Rettke v. Rettke,* 696 N.W.2d 846, 850 (Minn.App.2005) (quoting *Tikalsky,* 166 Minn. at 470, 208 N.W. at 180) (emphasis added).

Citing *Tikalsky* and *Rettke,* appellant argues that the dissolution proceeding in this case abated upon Miller's death, even though the district court had already entered judgment dissolving the marriage. But, in *Tikalsky* and *Rettke,* the death of one spouse occurred *before* the parties' marriage was dissolved. *Tikalsky,* 166 Minn. at 469, 470, 208 N.W. at 180; *Rettke,* 696 N.W.2d at 848. Here, Miller's death occurred *after* the district court entered its judgment of marriage dissolution. And a marriage dissolution is final when judgment is entered. Minn.Stat. § 518.145, subd. 1 (2008); *see also Gabrielson v. Gabrielson,* 363 N.W.2d 814, 815 (Minn.App. 1985) (recognizing that in a bifurcated dissolution proceeding, dissolution occurs when judgment dissolving marriage is entered, although other aspects of the proceeding may be reserved and resolved by later judgment). *But see Tasker v. Task-*

*er,* 395 N.W.2d 100, 104 (Minn.App.1986) (noting in a bifurcated dissolution case that time for appeal does not begin to run until entry of final judgment disposing of all issues).

Because *Tikalsky* applies only to the dissolution of the "marriage relation," we conclude that its reasoning for excepting a "suit for divorce" from the general survival rule does not apply to a marriage-dissolution proceeding *after* a marriage is dissolved. Where the dissolution judgment has been entered before the court's division of the parties' property, the need to divide the parties' property continues to exist. *Cf. State v. One 1921 Cadillac Touring Car,* 157 Minn. 138, 144, 195 N.W. 778, 780 (1923) (noting that in rem action does not abate upon property owner's death).

Appellant also cites *Anders v. Anders,* 170 Minn. 470, 213 N.W. 35 (1927), for the proposition that a dissolution proceeding abates when one party dies. But *Anders* is distinguishable because, like *Tikalsky* and *Rettke,* it involves the death of one party before the entry of judgment dissolving the marriage relation. *Anders,* 170 Minn. at 471, 213 N.W. at 35. *Anders* focuses on whether a judgment *dissolving the marriage relation* may be entered nunc pro tunc after one party has died. *See id.* at 471–72, 213 N.W. at 35–36 (holding that judgment dissolving marriage relation would not be entered nunc pro tunc where party died after divorce was "granted" but without the court having made findings of fact and conclusions of law or having entered judgment).

Another case that appellant cites, *Wegge v. Wegge,* 252 Minn. 236, 89 N.W.2d 891 (1958), actually cuts against his position. In *Wegge,* the supreme court considered an appeal from an order denying a motion for a new trial in a dissolution proceeding that involved no property issues and in

which judgment had not yet been entered. 252 Minn. at 237, 238, 89 N.W.2d at 891, 892. One party died while the appeal was pending. *Id.* at 237, 89 N.W.2d at 891. The court remanded for dismissal, holding that the dissolution proceeding was abated and the appeal mooted because one party had died before the entry of judgment. *Id.* at 238–39, 89 N.W.2d at 892–93. But the court also noted that where an appeal is taken from a judgment of divorce and one of the parties died pending the appeal, *and property rights are affected by the judgment,* the judgment will be reviewed. *Id.* at 238, 89 N.W.2d at 892 (citing *Swanson v. Swanson,* 182 Minn. 492, 234 N.W. 675 (1931)) (emphasis added). In *Swanson,* the supreme court held that property issues arising out of a dissolution judgment were reviewable when one party died pending appeal. 182 Minn. at 494, 234 N.W. at 675–76. The supreme courts holdings in *Wegge* and *Swanson* suggest that while issues related to the dissolution of the marital relation itself abate on the death of one party per *Tikalsky,* if judgment dissolving the marital relation has been entered, the proceeding involving property issues does not abate. *See Wegge,* 252 Minn. at 238, 89 N.W.2d at 892 (stating that *Tikalsky* and *Anders* are distinguishable where property rights are involved).

Here, because the dissolution judgment was entered on August 13, 2008, before Miller's death, the cases cited by appellant are inapposite.

We conclude that the general survival-of-actions rule stated in Minn.Stat. § 573.01 applies to the property-division issues that were unresolved in the dissolution proceeding at the time of Miller's death. The district court therefore did not err by not dismissing the dissolution proceeding and remaining property-division issues upon Miller's death.

## II. Characterization of Nonmarital Property

Appellant argues that the district court erred by characterizing certain property as Miller's nonmarital property because the evidence is insufficient to support the findings underlying the court's conclusion. An appellate court "independently review[s] the issue of whether property is marital or nonmarital, giving deference to the district court's findings of fact." *Baker v. Baker,* 753 N.W.2d 644, 649 (Minn.2008).

Marital property, with exceptions not relevant here, is defined as real or personal property acquired by either party at any time during the existence of the marriage. Minn.Stat. § 518.003, subd. 3b (2008). Nonmarital property, in relevant part, is defined as real or personal property, acquired by either spouse, which "is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse"; "is acquired before the marriage"; or "is acquired in exchange for or is the increase in value of" nonmarital property. *Id.* "All property acquired by either spouse during the marriage is presumptively marital, but a spouse may defeat the presumption by showing by a preponderance of the evidence that the property acquired is nonmarital." *Baker,* 753 N.W.2d at 649–50 (citing Minn.Stat. § 518.003, subd. 3b).

"For nonmarital property to maintain its nonmarital status, it must either be kept separate from marital property or, if commingled with marital property, be readily traceable." *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn.1997). "Simply routing the funds through a joint account does not transform non-marital property into marital property." *Nash v. Nash,* 388 N.W.2d 777, 781 (Minn.App.1986) (quotation omitted), *review denied* (Minn. Aug.

20, 1986). And tracing property to its nonmarital source does not require intricate detail. *Danielson v. Danielson*, 392 N.W.2d 570, 572 (Minn.App.1986); *see also Nash*, 388 N.W.2d at 781 ("Tracing does not require a party to produce the serial numbers of the dollar bills used.").

## A. Hunting Land

■ The district court concluded that Miller had a $25,000 nonmarital interest in the hunting land, based on its finding that Miller made a $25,000 down payment on the property out of her nonmarital assets. Appellant argues that the district court's conclusion is erroneous because respondent "was not able to ascertain where the down payment was made from," and, alternatively, that Miller purchased the hunting land as a gift for him.

Respondent testified at trial that the purchase price of the property was $75,000, and that the parties paid for it with a $24,000 down payment and a $51,000 mortgage. Although appellant is correct that respondent was unable to specifically ascertain the source of the down payment, she did testify that appellant was not receiving any income at the time the down payment was made, not even Social Security payments, and that she was not aware of any source from which the down payment could have been made other than Miller's nonmarital funds. This evidence is sufficient to support the district court's finding that Miller contributed the down payment from her nonmarital assets.[2] *See Doering v. Doering*, 385 N.W.2d 387, 391 (Minn.App.1986) (ruling that, if believed, oral testimony can be sufficient to trace a non-marital interest). Because at least

$25,000 of the present value of the hunting land is traceable to Miller's nonmarital assets, the district court did not err by concluding that Miller has a $25,000 nonmarital interest in the hunting land.

## B. Amish Farm

■ Appellant argues that the district court erred by concluding that Miller has a $25,387.14 nonmarital interest in the net proceeds from the sale of the Amish Farm. But appellant's argument lacks merit because the district court based its conclusion on its finding that Miller contributed $25,387.14 toward the earnest money, down payment, and monthly mortgage payments on the Amish Farm from her nonmarital assets. And the court's finding is based on substantial evidence in the record. Respondent testified about Miller's nonmarital contributions based on her examination of Miller's and appellant's financial records. The $25,387.14 is traceable to Miller's nonmarital assets. Therefore, the district court did not err by concluding that Miller has a $25,387.14 nonmarital interest in the net proceeds from the sale of the Amish Farm.

## C. Appellant's Withdrawal from Joint Money–Market Account

■ Appellant argues that the district court erred by concluding that Miller had a nonmarital interest of $52,636.59 of the $63,096.45 funds appellant withdrew from the joint money-market account shortly before Miller commenced the marriage-dissolution proceeding. Appellant argues that Miller transferred money into the joint money-market account for the benefit of both parties, that Miller never asked appellant to repay any money, and that no

---

2. The fact that respondent testified only to a $24,000 down payment does not require us to overturn the court's finding that Miller's nonmarital interest was $25,000. Evidence in the record shows that, as of March 15, 2009, the mortgage against the hunting land had been reduced from $51,000 to $45,000, and that Miller made 34 monthly payments on that mortgage from her individual bank account.

evidence supports the court's conclusion. We disagree.

The district court made detailed findings about the financial status of Miller and appellant at the time of their marriage and the fact that they relied primarily on Miller's nonmarital assets for their support during the marriage. The court's findings are supported by the bank statements and financial records admitted at trial, as well as respondent's detailed testimony about the sources of Miller's assets before the marriage and the deposits into and withdrawals from the accounts maintained by Miller and appellant. Respondent also expressly testified that the money in the account was what was left of: (1) a $26,949.30 inheritance to Miller; (2) $12,000 from Miller's retirement annuity; and (3) $35,000 from the sale of the Amish property, $25,387.14 of which, as discussed above, was Miller's nonmarital property. The district court concluded that after appellant returned $8,000 of the withdrawn funds, he was left with $44,636.59 of Miller's nonmarital money. The court's findings are not clearly erroneous and its conclusion is based on substantial evidence. *See Doering*, 385 N.W.2d at 391.

### III. Appellant's Disposal of Miller's Nonmarital Funds

#### A. Evidentiary Support in the Record

Appellant argues that the district court erred by concluding that he had "dissipated, hidden, secreted, or otherwise disposed of" $55,096.45 of his $63,096.45 withdrawal from the joint money-market account. He claims that the court's finding is not supported by the evidence, and that the court therefore abused its discretion by offsetting his marital apportionment by the amount withdrawn. We disagree.

Minnesota law provides:

If the court finds that a party to a marriage, without consent of the other party, has in contemplation of commencing, or during the pendency of, the current dissolution, separation, or annulment proceeding, transferred, encumbered, concealed, or disposed of marital assets except in the usual course of business or for the necessities of life, the court shall compensate the other party by placing both parties in the same position that they would have been in had the transfer, encumbrance, concealment, or disposal not occurred.

Minn.Stat. § 518.58, subd. 1a (2008). Here, the record supports the district court's finding that appellant withdrew $63,096.45 from the parties' joint money-market account without Miller's knowledge or consent and disposed of the $55,096.45 that he did not return. Respondent testified that appellant withdrew the money, and that Miller intended to use it for her medical treatment. Additionally, the record contains images of cashier's checks that correspond to withdrawals that bear appellant's signature.

While the district court did not expressly find that appellant took the money *in contemplation of commencement of the divorce proceeding*, this finding is implicit in the court's ultimate finding that appellant "dissipated, hid[ ], secreted, or otherwise disposed of" the money without Miller's knowledge and consent and its conclusion that Miller's estate must be compensated. Because this implicit finding is supported by the evidence in the record, we will not disturb it.

#### B. Effect of Appellant's Asset Disposal on Property Division

Section 518.58, subdivision 1a, provides that where a party disposes of *marital* assets, the other party shall be

compensated. In this case, $44,636.59 of the money disposed of by appellant was Miller's *nonmarital* money. The statute does not expressly contemplate such a situation. But the district court has broad discretion in dividing property, and this court will not find an abuse of discretion unless there is "a clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

Here, the district court's decision to offset appellant's marital award by the extent to which he dissipated the money-market funds was not an abuse of the court's discretion.

A district court is required to make specific findings of unfair hardship before it may award one spouse's nonmarital property to the other spouse. Minn.Stat. § 518.58, subd. 2 (2008). Therefore, to allow appellant to keep the dissipated funds with no credit to Miller, the court would have been required to make a finding of unfair hardship to appellant. The court made no such finding and the record before us would not support such a finding. The court's decision to reduce appellant's marital-property award by the amount of his dissipation of Miller's nonmarital property was reasonable, supported by the record, and well within its discretion.

## DECISION

Because the district court entered judgment dissolving the marriage of appellant and Miller before Miller died, the property-division issues in the dissolution proceeding did not abate, and the district court did not err by denying appellant's motion to dismiss. Furthermore, the district court did not err in its characterization of Miller's nonmarital property or its property division.

**Affirmed.**